AGANA BAY DEVELOPMENT COMPANY (HONG KONG) LTD., Petitioner-Appellee,

v.

SUPREME COURT OF GUAM, Respondent-Appellant,

DILLINGHAM CORPORATION OF THE PACIFIC, Real Party in Interest.

No. 75–1059.

United States Court of Appeals, Ninth Circuit.

Jan. 14, 1976.

Rehearing and Rehearing En Banc Denied March 3, 1976.

---

Howard G. Trapp, Esq. (argued), of Trapp, Gayle, Teker, Weeks & Friedman, Agana, Guam, for petitioner-appellee.

David T. Wood, Asst. Atty. Gen. (argued), Government of Guam, Agana, Guam, for respondent-appellant.

## OPINION

Before CARTER, GOODWIN and KENNEDY, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

In this case we hold that the Territory of Guam is authorized to eliminate the appellate jurisdiction of the District Court of Guam, pertaining to local, non-federal issues, by transferring that jurisdiction to a court created by the territorial legislature. The Court Reorganization Act, Guam Public Law 12–85 (January 16, 1974), changes the designation of the principal local court created by the Territory from "Island Court" to "Superior Court." The Act also creates a Supreme Court of Guam and provides, effective July 1, 1974, that the supreme court has exclusive jurisdiction of appeals from the superior court. Formerly, all appeals from the Island Court had been taken to an appellate division of the District Court of Guam.

Agana Bay Development Company, a petitioner in this action, was the defendant in a prior suit commenced in the superior court, concerning the validity of certain liens asserted by plaintiff Dillingham Corporation of the Pacific. Partial summary judgment was granted for the defendant Agana Bay, and Dillingham appealed to the Supreme Court of Guam. Agana Bay then filed this action in the District Court of Guam, seeking a Writ of Prohibition directing the supreme court to cease all appellate proceedings in the mechanics lien case. In the district court proceedings the respondent supreme court was represented by the Attorney General of Guam.

The district court issued a peremptory Writ of Prohibition pursuant to 28 U.S.C. § 1651, permanently restraining the Supreme Court of Guam from pro-

ceeding further on the appeal of the mechanics lien case. The court also held invalid those portions of the Court Reorganization Act which divested the district court of its appellate jurisdiction and which created the Supreme Court of Guam. The respondent supreme court now appeals to this court, which has jurisdiction of appeals from all final decisions of the District Court of Guam. 28 U.S.C. §§ 1291, 1294(4).

■ As an unincorporated territory of the United States, Guam is subject to the plenary authority of Congress to provide for its government under article IV, section 3 of the United States Constitution. Guam acquired its present status as an organized territory in 1950 when Congress enacted the Organic Act of Guam. Ch. 512, 64 Stat. 384. That statute established a territorial government with an elected legislature and a governor appointed by the President. In 1968 the Organic Act was amended to provide for local election of the Governor. Pub. L.No. 90–497, 82 Stat. 842. Even in its original form, the Organic Act delegated a large measure of self-government to the people of Guam. It has functioned as a constitution for Guam, outlining the scope of the territorial government's authority. And the territorial government of Guam can act only to the limits of that Organic Act, just as the national government must observe the limits of the Constitution. *Bordenelli v. United States,* 233 F.2d 120, 122, 16 Alaska 185 (9 Cir. 1956).

The provisions of the Organic Act of 1950 established a judicial system for Guam but also gave the territorial government significant responsibility for adapting that system to its changing needs. Section 22 of the Organic Act established the "District Court of Guam" as a court of record, with original jurisdiction both in cases arising under federal laws and in all other cases, and appellate jurisdiction as to local, non-federal issues, as determined by the Guam Legislature. The legislature was also given power to create other courts and define their procedure and jurisdiction, and to transfer original jurisdiction from the district court to these other courts, except in cases arising under federal law. Section 23 provided for appeals to the Ninth Circuit and Supreme Court from certain decisions of the District Court of Guam. Section 24 provided for the appointment of the district judge for a limited term and also allowed the assignment of federal judges to the district court when necessary for the proper dispatch of its business.

Pursuant to the authority delegated in the Organic Act, the first Guam Legislature in 1951 adopted implementing legislation for the territorial judicial system, Public Law 17. The provisions of this act remained substantially unchanged through 1973.[1] Basically, they provided a judicial system with four tiers of courts. Commissioners' courts had original jurisdiction over petty criminal cases under local law. Guam Code Civ.Proc. § 112 (1970). The police court had original jurisdiction of certain misdemeanor criminal cases under local law, and appellate jurisdiction for de novo determination of cases decided by the commissioners' courts. *Id.* §§ 102, 104. The Island Court was a court of record with original jurisdiction, exclusive of the district court, in specified matters arising under local laws; these causes generally included misdemeanor criminal offenses, domestic relations, probate, and civil cases where less than $5,000 was in controversy. *Id.* § 82. The Island Court also had appellate jurisdiction over judgments of the police court imposing imprisonment or a fine in excess of $25. *Id.* § 83. The District Court of Guam

---

1. See Pub.L.No. 29, 2d Guam Legis., Guam Code Civ.Proc. §§ 51–278 (1953) (new enactment of civil procedure code); Guam Code Civ.Proc. §§ 51–282 (1970 & Supp.1973). Major changes occurring after the adopting of Public Law 17 include: the addition in 1952 of Title V on the juvenile court, *id.* §§ 250–82; changes in the method of appointing and removing territorial judges, *id.* §§ 81, 90–99; alterations in the police court's jurisdiction, *id.* §§ 101–03; and changes regarding the Judicial Council of Guam, *id.* §§ 121–23.

retained its original jurisdiction over cases arising under local laws except those over which such jurisdiction was transferred to the Island Court by section 82. The appellate jurisdiction of the district court was defined to include a broad range of decisions of the Island Court in both civil and criminal cases. *Id.* § 63.[2]

At the very outset it appeared Guam did not desire appeals from local courts to be heard by a single district judge. Public Law 17 stated that the District Court of Guam should exercise its appellate jurisdiction in a division consisting of the district judge as presiding judge and two other judges appointed by him from among the judges designated pursuant to section 24 of the Organic Act.[3] This provision was understood as an implementation of section 22(a) of the Organic Act. *See Eiban v. Government of Guam,* 115 F.Supp. 519, 520–21 (D.Guam, App.Div.1953).

Major changes were made in the Guam judicial system when the Court Reorganization Act was adopted in 1974. The chapter of the Civil Procedure Code dealing with the District Court of Guam was repealed. A new chapter was adopted in its place, establishing a Supreme Court of Guam with essentially the same appellate jurisdiction as previously held by the district court over local, non-federal issues. The Act also created a Superior Court of Guam to replace the former Island, police, and commissioners' courts. The superior court was made a court of general original jurisdiction in all cases arising under the laws of Guam, but not for cases arising under federal law or pertaining to the Guam territorial income tax.[4]

■ The intent of the Court Reorganization Act was presumably to establish for Guam a local judicial system independent of the federal courts. The question raised on this appeal is whether Congress has authorized Guam to undertake such a reorganization, when the effect is to divest the District Court of Guam of its appellate jurisdiction as to local, non-federal questions. The language of section 22 of the Organic Act is most pertinent to this inquiry:

"There is created a court of record to be designated the 'District Court of Guam', and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, trea-

---

**2.** Section 63 refers to other provisions of Guam law to define specific rights of appeal. *See, e. g.,* Guam Penal Code §§ 1237–38 (rights of appeal in criminal cases; defendant may appeal from any final judgment of conviction); Guam Code Civ.Proc. § 936 (all others in civil cases are appealable unless expressly made final elsewhere). In *Bank of America v. Webster,* 439 F.2d 691 (9 Cir. 1971), we held that § 63, containing a specific enumeration of appealable cases, controlled the more general language of § 936 in affirming the district court's refusal of jurisdiction for an attempted appeal from a writ of execution issued in supplementary proceedings after a default judgment.

**3.** Section 24 originally authorized the Chief Justice of the United States to assign federal judges to the District Court of Guam when "necessary for the proper dispatch of the business of the court." In 1958 this section was amended to authorize the Chief Judge of the

Ninth Circuit, in addition, to designate federal judges from the Ninth Circuit and judges of the Island Court of Guam or the High Court of the Trust Territory of the Pacific Islands. Pub. L.No. 85–444, 72 Stat. 179.

**4.** Since the Court Reorganization Act repealed the former provisions of the Code dealing with the original jurisdiction of the district court and the Island Court, Guam Code Civ.Proc. §§ 62, 82 (1970), there is no express provision that the superior court's original jurisdiction is to be exclusive of the district court. However, the district court only has original jurisdiction in cases other than federal questions, if not "transferred" to courts created by the Guam Legislature. 48 U.S.C. § 1424(a) (1975). It appears that the Court Reorganization Act intended to transfer exclusive jurisdiction of all local matters, including serious criminal offenses and civil cases with more than $5,000 in controversy, to the superior court.

ties, and laws of the United States, regardless of the sum or value of the matter in controversy, shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine. The jurisdiction of and the procedure in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam."

The first sentence of section 22 states that the judicial power in Guam shall reside in a "district court" and in "such court or courts as may have been or may hereafter be established by the laws of Guam." The authority given to the Guam legislature is not limited to creating inferior courts.

The overstuffed sentence which follows has to be read in light of the power Congress has just given the Guam legislature to establish its own courts. When so read, it appears that Congress intended the following: First, with respect to federal cases, it tracked the jurisdiction of the district court to Article Three of the United States Constitution ["The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . .." U.S. Const. art. III, § 2]. Second, as to local, non-federal cases, it gave the district court original jurisdiction in all "other causes" until the Guam Legislature provides otherwise under the power created in the first sentence. Third, it let the district court "have" such appellate jurisdiction as the legislature may determine. This third clause says that the Legislature can give appellate jurisdiction to the Guam District Court. By the same token it would seem to follow that what it can give, it can take away and transfer to its own courts, which courts it was empowered to create.

It is not significant that section 22 expressly states that original jurisdiction of non-federal cases may be transferred to other courts, but the section does not expressly state that appellate jurisdiction may also be transferred. This sentence in section 22 is part of the Organic Act of 1950, 48 U.S.C. §§ 1421–24 (1975), which established the territorial government for Guam. At that time Congress apparently presumed that Guam would subsequently create its own inferior courts for non-federal matters, but would give appellate jurisdiction over these inferior courts to the district court. In fact, appellate jurisdiction was given by the Legislature to the district court for twenty-three years. The long standing existence of appellate jurisdiction in the district court compelled the creation of the procedures in the 1958 amendment to 48 U.S.C. § 1424(b) (1975).

However, the granting of appellate jurisdiction by the Guam Legislature to the district court was not compelled by the statute. To the contrary, the creation of Guam's own court system was authorized. We conclude that Guam's power to transfer appellate jurisdiction to its own Supreme Court arises from its power to create appellate courts and its power to determine the appellate jurisdiction of the district court as to local, non-federal questions. We hold that Congress authorized the Legislature to create, for non-federal questions, any kind of appellate system it saw fit.

We also note that no procedure is given for review or appeal of Guam appellate court decisions to an Article Three Court. However, even before the creation in 1974 of the Guam Supreme Court, the Guam Legislature had the power to determine the extent of appellate jurisdiction by the district court over Guam inferior courts. 48 U.S.C. § 1424(a) (1975). Thus before 1974 the legislature could extinguish the right to appeal to an Article Three Court.

Also, it is well established that a right of appellate review is statutory, did not exist at common law, and is not required by the United States Constitution. *Francisco Enterprises, Inc. v. Kirby,* 482 F.2d 481, 484 (9 Cir. 1973), citing *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1955). Further-

more, if the hiatus in appellate review needs to be filled, Congress can provide for it; in fact, a bill to that effect has been introduced in Congress. H.R. 4581, 94th Cong., 1st Sess. (March 10, 1975).

We do not base our opinion on *Corn v. Guam Coral Co.,* 318 F.2d 622 (9 Cir. 1963). In *Corn* we ruled that the 1958 amendments to the Organic Act did not *create* a new appellate body, but only formalized the appellate procedures already enacted by the Guam Legislature in 1951. Congress recognized that Guam had validly exercised its powers in creating appellate jurisdiction in the district court over local, non-federal, cases.

However, *Corn* did not hold that Guam could have independently created its own appellate courts which were not subject to review by the district court. Such an issue was not reached in *Corn.* Therefore we find *Corn* not on point and instead rely on the language in the Organic Act, 48 U.S.C. § 1424(a) (1975).

The lower court in this case relied on "congressional intent" in finding the 1974 legislation establishing a Guam supreme court invalid. It stated that prior to enacting the Organic Act in 1950, the United States House of Representatives considered a bill which would have provided Guam with a supreme court whose decisions would have been appealable to an Article Three Court. *See* 2 U.S.Code Cong.Serv. pp. 2840, 2847 (1950). As stated in a letter of May 3, 1949, from the Secretary of the Interior to the President of the Senate, "[t]he judicial branch would consist of a supreme court, with a single justice appointed by the President, with the advice and consent of the Senate for a 6-year term, and of such *inferior* courts as the legislature might create." [Emphasis added]. *See* 2 U.S.Code Cong.Serv. p. 2847 (1950), letter from J. A. Krug, Secretary of the

Interior to the Hon. Alben W. Barkley, President of the Senate.

This bill was relied upon by the district court for the proposition that, "Congress intended to supervise the judicial branch of government in Guam." However, when the Organic Act was finally passed by Congress, the provisions relating to a Congressionally created supreme court were eliminated.[5] The refusal to enact the bill leads to an interference directly contrary to that drawn by the district court—that is, Congress did *not* intend to prohibit the creation by Guam of appellate courts nor did Congress intend to retain control over Guam's appellate courts with respect to local, non-federal cases.

A comparison of Guam with other territories shows that the Guam Organic Act is unique and it delegates the widest powers of any of the territories to the legislature for the creation of appellate courts. For example, prior to statehood, Alaska had no supreme court. The judicial authority was vested in district court. Act of June 6, 1900, c. 786, § 4, 31 Stat. 322; 48 U.S.C. § 101 (1952). Alaska could not create courts which were independent of those created by Congress and from which there was neither appeal nor supervision. *In re Munro,* 1 Alaska 279, 285 (1909).

For the Territory of Hawaii, the judicial power was vested in "one supreme court, circuit courts, and in such *inferior* courts as the legislature may from time to time establish." (emphasis added) April 30, 1900, c. 339, § 81, 31 Stat. 157; 48 U.S.C. § 631 (1952). The Hawaiian Legislature had no authority to create any but inferior courts. *Territory v. Miguel,* 18 Hawaii 402, 404 (1907). Other provisions of the Act of 1900 governed the appointment, tenure, and salaries of the judges on the supreme court. *See* 48 U.S.C. §§ 632–34 (1952).[6]

---

**5.** When the companion bill to H.R. 7273, S. 1892, came before the United States Senate, amendments were proposed which abandoned the concept of a congressionally created Supreme Court of Guam. The Senate adopted the amendments. Then the House of Representatives concurred in the amendments. *See* 2 U.S.Code Cong.Serv. pp. 2840, 2842 (1950).

**6.** 48 U.S.C. §§ 632 and 633 (1952), relating to the appointment of the justices by the President, were omitted when Hawaii became a

Under the first organic act of Puerto Rico, a supreme court was provided for; the justices were appointed by the President. Act of April 12, 1900, c. 191, § 33, 31 Stat. 84.[7] A second organic act created a United States District Court. The district court did not have appellate jurisdiction over local courts, but did have jurisdiction over local matters involving non-residents. Act of March 2, 1917, c. 145, § 41, 39 Stat. 965, as amended; 48 U.S.C. § 863 (1952). The legislature of Puerto Rico could not alter the jurisdiction of the district court. *Id.*, § 40; 48 U.S.C. § 861 (1952).

For the Virgin Islands the judicial power is vested in a district court and "in such court or courts of inferior jurisdiction as may have been or may hereafter be established by local law." 48 U.S.C. § 1611 (1975). The district court was expressly given "appellate jurisdiction to review the judgments and orders of the inferior courts." 48 U.S.C. § 1612 (1975).

In contrast is Guam. Congress has not created a supreme court, nor has it acted to regulate any such court which Guam may create. In Hawaii and Puerto Rico, on the other hand, Congress has regulated the appointment, tenure, and salaries of supreme court justices.

Secondly, Guam was given the power to create a court system and was not limited to creating "inferior" courts. This is in contrast to the Virgin Islands and Hawaii, which were, or are, so limited.

Thirdly, Guam was expressly given the power to extinguish the appellate jurisdiction of the district court over local courts, with respect to local, non-federal, cases. In contrast, no other territory was given such power.

We therefore draw the inference that had Congress intended to prohibit the creation of appellate courts or to bar the transferring of appellate jurisdiction from the district court, Congress could have clearly stated as much or could have patterned Guam after the other territories.

We believe that the policy of leaving local matters to courts created by local legislatures is a sound one. Twenty-five years have passed since Guam was an "underdeveloped and isolated possession of the United States", as described by the district court. There is nothing to indicate that Guam is incapable of establishing and operating its own appellate court with respect to purely local matters. There is nothing in the language or legislative history of the Organic Act requiring the interpretation that the district court must be the highest and only appellate court in Guam. Rather, the only language pertaining to appellate courts grants the Guam Legislature total authority to transfer appellate jurisdiction over local, non-federal cases from the district court to Guam courts.

Reversed.

ANTHONY M. KENNEDY, Circuit Judge (dissenting).

In my view the Organic Act of Guam does not authorize the territorial legislature to transfer the appellate jurisdiction of the District Court of Guam to a locally-created court. Thus I would affirm the judgment of the district court.

state. The Constitution of Hawaii, art. V, § 3 (1959), provides for the appointment of the justices by the governor, with the advice and consent of the Hawaiian Senate.

Sections 634 and 634a of 48 U.S.C. (1952), relating to the salaries of the justices, were expressly repealed by Pub.L. 86–3, § 14(e), Mar. 18, 1959, 73 Stat. 10, effective upon the admission of the state of Hawaii into the Union. Under the Constitution of Hawaii, art. V, § 3, the compensation is to be prescribed by law. *See* 2 U.S.Code Cong. and Admin.News, 86th Cong., 1st Sess., pp. 1375, 1385 (1959).

7. *See* 2 U.S.Code Cong. and Admin.News, p. 1892 (1952). This section, as amended was repealed by the Act of July 3, 1950, c. 446, § 5(2), 64 Stat. 320, eff. July 25, 1952. A Constitution of the Commonwealth of Puerto Rico was ratified by Congress by Joint Resolution, July 3, 1952, c. 567, 66 Stat. 327. Under the Constitution of Puerto Rico, art. V, § 8 (1952), the judges of the supreme court are appointed by the governor, with the advice and consent of the senate.

This case presents a difficult question of statutory interpretation, primarily involving the following convoluted sentence in section 22(a) of the Organic Act:

> The District Court of Guam shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties, and laws of the United States, regardless of the sum or value of the matter in controversy, shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine.

48 U.S.C. § 1424(a). By this language the Act vests in the district court original jurisdiction of federal question cases and all local matters in Guam. It also provides that the territorial legislature can divest the district court of some or all of its original jurisdiction over local matters by transferring that jurisdiction to locally-created courts, thereby allowing the local judicial system to expand its capability as litigation increases. The district court would then have appellate jurisdiction over such cases as determined by the legislature.

My brothers acknowledged that section 22(a) does not explicitly authorize Guam to transfer the district court's appellate jurisdiction to a local court. However, they find such a transfer included within the legislature's power to "determine," and thus to extinguish, the appellate jurisdiction of the district court. Moreover, section 22(a) literally empowers the territorial government to establish a "court or courts" in addition to the district court and to prescribe the jurisdiction and procedure of these other courts; this power is not expressly limited to "inferior" courts or courts of original jurisdiction.

However, the Organic Act must be construed to give force and effect to all its provisions, and no language should be taken out of context and construed without reference to the whole territorial system established by Congress. See Carter v. Gear, 197 U.S. 348, 25 S.Ct. 491, 49 L.Ed. 787 (1905). I think Congress would have spoken more directly had it intended to enable the territorial legislature to substitute a local appellate court for the appellate division of the district court. Unlike the majority, I find it significant that section 22(a) says nothing about the transfer of appellate jurisdiction to local courts, while it expressly authorizes such a transfer of the district court's original jurisdiction. I would conclude that such a transfer of appellate jurisdiction was not authorized by Congress.

I also do not agree with the majority that the power to "determine" the appellate jurisdiction of the district court necessarily includes the power to abolish it. I think it was more likely intended to permit the local legislature to decide what cases were serious enough to be appealable. This power may be compared to that of Congress under article III to regulate the appellate jurisdiction of the Supreme Court. Congress has never tried wholly to eliminate the Court's appellate jurisdiction, and thus we cannot tell how far this power extends. Professor Hart has suggested it would not permit Congress to "destroy the essential role of the Supreme Court in the constitutional plan." Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362, 1365 (1953). Similarly, I would conclude that the power of Guam to determine the appellate jurisdiction of the district court would not allow that jurisdiction to be entirely extinguished. Moreover, for Guam to abolish all appellate jurisdiction would be a wholly irresponsible legislative act, raising serious constitutional questions. It is unlikely that Congress intended to give the Guam legislature the power to commit such an act, and such intent should not be assumed in the absence of express language to that effect. To rest the validity of the Court Reorganization Act, as the majority does, on the assumption that such power

validly exists, is to place the Act on a most infirm foundation.

My conclusion that Congress did not intend to authorize such a transfer of jurisdiction is supported by subsequent legislative history. In 1951, Congress amended the Organic Act to expand the Ninth Circuit's appellate jurisdiction to all final decisions of the district court, rather than the limited categories contained in the original section 23.[1] In 1958 Congress added a paragraph to section 22(a) of the Organic Act, giving explicit authorization for the three-judge appellate court procedure that had been implemented by Guam Public Law 17.[2] These amendments indicate a congressional purpose to sanction a prescribed system for federal court review of local court decisions. Every word of the second paragraph of the amended section 22(a) would become superfluous if Guam could remove the appellate jurisdiction of the district court. This pattern of congressional approval and acceptance cannot now be made completely moot by the Court Reorganization Act.

The Court Reorganization Act makes sweeping changes in the judicial system developed in Guam over the previous 23 years. Prior to 1974, virtually all significant matters were within either the original or appellate jurisdiction of the district court, and reviewable by this court and the United States Supreme Court. Under the new system, only cases "arising under" federal law or involving the territorial income tax remain within the federal court jurisdiction; as to other matters there is no appeal beyond the Supreme Court of Guam. Important federal issues can be presented in cases which do not "arise under" federal law. See 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3562 (1975). It seems unlikely to me that Congress intended to confer on the territorial legislature the power to eliminate review in the federal court system of all claims raised in the territorial courts.[3]

1. Section 23 of the Organic Act originally provided for appeal to the Ninth Circuit from final decisions of the district court involving federal law, habeas corpus, and civil cases with $5,000 in controversy; direct appeals to the Supreme Court were allowed as in 28 U.S.C. § 1252. The 1951 amendment repealed § 23, and decisions of the District Court of Guam were made reviewable in precisely the same manner as those of United States district courts under 28 U.S.C. §§ 1252, 1291–92, & 1294. Ch. 655, § 55–56, 65 Stat. 728–30.

2. The amendment added the following paragraph to section 22(a):

Appeals to the District Court of Guam shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum. The judge appointed for the court by the President shall be the presiding judge of the appellate division and shall preside therein unless disqualified or otherwise unable to act. The other judges who are to sit in the appellate division at any session shall be designated by the presiding judge from among the judges assigned to the court from time to time pursuant to section 1424b(a) of this title. The concurrence of two judges shall be necessary to any decision by the District Court of Guam on the merits of an appeal but the presiding judge alone may make any appropriate orders with respect to an appeal prior to the hearing and determination thereof on the merits and may dismiss an appeal for want of jurisdiction or failure to take or prosecute it in accordance with the applicable law or rules of procedure.

Pub.L.No. 85–444, 72 Stat. 178.

This amendment was described as "an additional paragraph recognizing and making suitable procedural provisions for the appellate division of the district court as it now exists under the local law." S.Rep.No.1582, 85th Cong., 2d Sess., 2 U.S.Code Cong. & Admin. News 2623 (1958). It was thought that this addition would "eliminate any doubt as to the status of the appellate division." Id. at 2629.

3. My concern is particularly acute for residents of Guam who are subject to the personal jurisdiction of the local courts. Persons born in Guam are United States citizens, 8 U.S.C. § 1407, and may have important federal claims in defending actions which do not "arise under" federal law.

The majority opinion seeks to limit its holding to approve the transfer of appellate jurisdiction only for local, nonfederal cases. Such a distinction has no support in the language of section 22. The federal question wording there is a grant of original jurisdiction to the district court, and Guam is authorized to transfer original jurisdiction in "other" cases to the local courts. This restriction does not modify the clause empowering the legislature

There is no evidence in the legislative history of the Organic Act of 1950 that Congress intended section 22(a) to give the territorial legislature the option of creating a local supreme court having the power of ultimate review. Earlier versions of the Organic Act included provisions for a congressionally-created supreme court for Guam; these were eliminated in favor of a federal district court.[4] The district court was established for the purpose of providing litigants in the Western Pacific with direct access to the federal court system.[5] Because of concern that there would not be sufficient federal question litigation to justify a separate district court in Guam, the court was given original jurisdiction in local matters. It was also envisioned that the district court would serve as an appellate body once local courts were established.[6] The apparent reason for eliminating the provision for a local supreme court was to avoid duplicative judicial machinery, rather than to allow local authorities to put certain controversies beyond review by the federal court system.

A comparison of Guam's judicial system with those established in other territories provides no support for the majority's view. Although there are many differences, there are indications that the system established in Guam was intended to be similar to those of the other territories.[7] Congress assured that there would be review by article III courts of all cases in the former territories of Hawaii and Alaska and still maintains that policy for the Virgin Islands. Cases in the local courts of the Virgin Islands may be transferred or appealed to the District Court of the Virgin Islands, 48 U.S.C. § 1612, and subsequent review is authorized by Congress on the same basis as for other district courts. 28 U.S.C. §§ 1252, 1291, 1292, 1294. Congress has provided for United States Supreme Court review of decisions by the Supreme Court of Puerto Rico on virtually the same terms as for state court decisions. *Compare id.* § 1257 *with id.* § 1258. I do not think Congress intended to give Guam, of all its territories, the unchecked power to transfer appellate jurisdiction to its local courts and by the same stroke to deny review by any article III tribunal.

For the reasons set forth above I think that the Guam legislature's action in setting up the Supreme Court of Guam was beyond the scope of its powers under the Organic Act.

Accordingly, I respectfully dissent.

---

to "determine" the district court's appellate jurisdiction.

Indeed, the majority refuses to limit the potential jurisdiction of the Guam courts to non-federal matters transferred from the district court's original jurisdiction. Their rationale would thus allow the legislature to give the local courts concurrent jurisdiction of federal questions as well. Such cases could not be removed to the federal district court, since the local courts of Guam are not state courts. 28 U.S.C. § 1441; *cf. id.* § 1451 (defining District of Columbia Superior Court as a "state court" for removal purposes); 48 U.S.C. § 864 (authorizing removal from courts of Puerto Rico as if they were state courts). And, as noted, no appeal is possible from the Supreme Court of Guam.

4. The Interior Department's first proposal for the Guam Organic Act would have authorized both a supreme court and inferior courts in the Territory. The decisions of the supreme court would have been reviewable by the federal district court in Hawaii. *See* H.Rep.No.1677, 81st Cong., 2d Sess., 2 U.S.Code Cong.Serv.

2840, 2847 (1950). H.R. 7273, 81st Cong., 2d Sess. (1950), would have provided Ninth Circuit review of decisions by the Supreme Court of Guam, and the Northern District of California would have been extended to include Guam. *See also* S. 1892, 81st Cong., 2d Sess. (companion bill). *See generally* 96 Cong.Rec. 7576–77, 11078–82 (1950). An earlier bill set up a District Court of Guam and provided only for additional courts of inferior jurisdiction. S. 185, 81st Cong., 2d Sess. (1950).

5. *See* 2 U.S.Code Cong.Serv. 2840, 2843 (1950).

6. The text of these amendments was suggested to the Senate Committee by Judge Albert B. Maris, who acted as judicial advisor to the Territory of Guam. *See id.* at 2852–53.

7. *See* Letter of Judge Maris, *id.* at 2852 (analogizing judicial system for Guam to that adopted for Virgin Islands); Letter of J. A. Krug, Secretary of the Interior, *id.* at 2846 (original proposal for Organic Act modeled upon those of the other territories).