TERRITORY OF GUAM *v.* OLSEN

No. 76–439.   Argued March 29, 1977—Decided May 23, 1977

*Charles H. Troutman,* Attorney General of Guam, argued the cause for petitioner.   With him on the briefs was *Charles D. Stake,* Assistant Attorney General.

*Howard Trapp* argued the cause for respondent.   With him on the brief were *Laurence Vogel* and *Norman Dorsen.*

*Walter S. Ferenz* argued the cause and filed a brief for the Guam Bar Assn. as *amicus curiae* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question for decision in this case is whether the provision of § 22 of the 1950 Organic Act of Guam that the District Court of Guam "shall have such appellate jurisdiction as the [Guam] legislature may determine" authorizes the Legislature of Guam to divest the appellate jurisdiction of the District Court under the Act to hear appeals from local Guam courts, and to transfer that jurisdiction to the Supreme Court of Guam, newly created by the Guam Legislature.

I

Section 22 (a) of the Organic Act, 64 Stat. 389, before an amendment not relevant here, provided:

"There is hereby created a court of record to be designated the 'District Court of Guam,' and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of title 28, United States Code, *and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine.* The jurisdiction of and the procedure in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam." [1] (Emphasis supplied.)

---

[1] The "District Court of Guam" rather than "United States District Court of Guam" was chosen as the court's title, since it was created under

In 1951, under the authority of the Organic Act, the Guam Legislature created three local courts for local matters and defined cases appealable from those courts to the District Court.[2] That structure continued without substantial change for 23 years until 1974 when the Guam Legislature adopted the Court Reorganization Act of 1974. Guam Pub. L. 12–85. The former Island, Police, and Commissioners' Courts, were replaced by a Guam Superior Court with "original jurisdiction in all cases arising under the laws of Guam, civil or criminal, in law or equity, regardless of the amount in controversy, except for causes arising under the Constitution, treaties, laws of the United States and any matter involving the Guam Territorial Income Tax."[3] The Act also repealed the provisions of the Guam Code of Civil Procedure governing appeals to the District Court,[4] and created the Supreme Court of

---

Art. IV, § 3, of the Federal Constitution rather than under Art. III, and since § 22 vested the court with original jurisdiction to decide both local and federal-question matters. S. Rep. No. 2109, 81st Cong., 2d Sess., 12 (1950).

[2] The local courts were the Commissioners' Courts, the Police Court, and the Island Court. Guam Code Civ. Proc. § 81–278 (1953).

The District Court was vested with a wide-ranging appellate jurisdiction respecting criminal and civil decisions of the Island Court. §§ 62, 63, 82. A single judge constituted the District Court as a trial court. However, § 65 constituted the appellate division as a court of three judges. Congress approved this measure in a 1958 amendment to § 22 of the Act, 72 Stat. 178. See *Corn* v. *Guam Coral Co.*, 318 F. 2d 622, 627 (CA9 1963); letter of Judge Albert B. Maris, judicial advisor to Guam, to Chairman, Committee on Interior and Insular Affairs, House of Representatives, Mar. 14, 1957, reproduced in S. Rep. No. 1582, 85th Cong., 2d Sess., 7–9 (1958); *id.*, at 4–5.

[3] The Court of Appeals for the Ninth Circuit held that the Superior Court's original jurisdiction is exclusive and not concurrent with the District Court. *Agana Bay Dev. Co. (Hong Kong) Ltd.* v. *Supreme Court of Guam*, 529 F. 2d 952, 955 n. 4 (1976). This holding is not contested here.

[4] The Code of Civil Procedure provisions repealed by the Court Reorganization Act had provided that the District Court "shall have jurisdic-

Guam. The Act transferred to the Supreme Court essentially the same appellate jurisdiction as had previously been exercised by the District Court, providing that the Supreme Court "shall have jurisdiction of appeals from the judgments, orders and decrees of the Superior Court in criminal cases . . . and in civil causes." Pub. L. 12–85, § 3. Other provisions of the Reorganization Act amended various territorial laws to change the references to the Supreme Court of Guam from the Appellate Division of the District Court as the appellate court.

Respondent was convicted of criminal charges in the Superior Court, and appealed to the District Court of Guam. The District Court dismissed the appeal on the authority of a divided panel decision of the Court of Appeals for the Ninth Circuit holding that the 1974 Court Reorganization Act validly divested the District Court of its appellate jurisdiction and transferred that jurisdiction to the newly created Supreme Court. *Agana Bay Dev. Co. (Hong Kong) Ltd.* v. *Supreme Court of Guam*, 529 F. 2d 952 (1976). In this case, however, the Court of Appeals for the Ninth Circuit, overruled en banc [5] the panel decision in *Agana Bay,* and reversed the dismissal of respondent's appeal. 540 F. 2d 1011 (1976). The Court of Appeals held that "the appellate jurisdiction of the district court may not be transferred without congressional authorization and pursuant to such provisions and safeguards as Congress may provide." *Id.,* at 1012. Certain judgments of the appellate division of the District Court were made appealable to the Court of Appeals for the Ninth Circuit, and to this Court, by § 23 of the Organic Act of Guam of 1950, as

tion of appeals from the judgments, orders and decrees of the Island Court in criminal causes as provided in the Penal Code, Part II, Title VIII, and in civil causes . . . ." Guam Code Civ. Proc. § 63 (1953).

[5] The Court of Appeals convened en banc after respondent unsuccessfully sought certiorari before judgment in this Court. 425 U. S. 960 (1976).

amended, 65 Stat. 726,[6] but Congress has not similarly provided for appeals from judgments of the Supreme Court of Guam. In that circumstance, the Court of Appeals held that § 22 (a) did not authorize the transfer of the District Court's appellate jurisdiction to the Supreme Court of Guam because, under existing statutes "litigation in the territorial court [that] may involve substantial federal questions . . . cannot be reviewed by the United States Supreme Court or by any other Article III court . . . ." 540 F. 2d, at 1012. We granted certiorari, 429 U. S. 959 (1976). We affirm.

## II

We emphasize at the outset that the 1974 Court Reorganization Act in no respect affects the exclusive [7] original federal-

---

[6] Section 23 (a), as enacted in 1950, authorized appeals from final judgments of the District Court of Guam to the Court of Appeals in federal question, habeas corpus, and "all other civil cases where the value in controversy exceed[ed] $5,000 . . . ." Congress repealed this provision in 1951, 65 Stat. 729, but transferred its coverage to 28 U. S. C. § 1291 and thus expanded appealability to criminal cases raising only issues of local law, and to civil cases raising only issues of local law with value in controversy of less than $5,000. 65 Stat. 726. Review of certain interlocutory orders was also authorized by including the District Court of Guam within the coverage of 28 U. S. C. § 1292. 65 Stat. 726. See S. Rep. No. 1020, 82d Cong., 1st Sess., 16 (1951).

Under § 23 (b) as enacted in 1950 direct appeals from the District Court to this Court were available in cases to which the United States was a party and in which the District Court held an Act of Congress unconstitutional. This provision was continued without significant change in 1951 by including the District Court of Guam within the coverage of 28 U. S. C. § 1252. 65 Stat. 726.

[7] The Organic Act of 1950 does not on its face require that the original jurisdiction of the District Court over questions arising under federal law be exclusive, but the implementing legislation passed by Guam in 1951 left federal-question jurisdiction exclusively in the District Court by granting jurisdiction to the Guam courts only over cases arising under local law. Guam Code Civ. Proc. §§ 82, 102, 112 (1953). This interpretation in *Agana Bay Dev. Co. (Hong Kong) Ltd.* v. *Supreme Court of Guam, supra,* at 954, is also not contested here. See n. 3, *supra.*

200

question jurisdiction of the District Court granted by the first clause of the second sentence of § 22 (a), which now provides that the "District Court of Guam shall have the jurisdiction of a district court of the United States in all causes arising under the constitution, treaties, and laws of the United States . . . ." 48 U. S. C. § 1424 (a). Decisions in such cases brought in the District Court are appealable to the Court of Appeals for the Ninth Circuit or to this Court.[8] The question presented for decision here rather concerns appeals to the District Court from decisions of local courts in cases arising under local law. The language we must construe immediately follows in the same sentence, providing that the District Court "shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been *transferred by the legislature to other court or courts established by it*, and shall have such appellate jurisdiction as the legislature may *determine*." (Emphasis supplied.)

We first observe that Congress used different language in its grant of power to the Guam Legislature over the District Court's original jurisdiction from its grant of power over that court's appellate jurisdiction. The Act expressly provides that original jurisdiction might be *"transferred"* to "other court or courts" created by the legislature. As to appellate jurisdiction, however, the wording is that the District Court "shall have such appellate jurisdiction as the legislature may *determine*." The question immediately arises why, if Congress contemplated authority to eliminate the District Court's appellate jurisdiction by transferring it to a local court, Congress did not, as in the case of "original jurisdiction," explicitly provide that appellate jurisdiction too might be *"transferred."* Moreover, if Congress contemplated such a broad grant of authority, it might be expected that it would have referred, as in the case of original jurisdiction, to "other court or courts" that would be established to assume the appellate jurisdiction

---

[8] See n. 6, *supra*.

transferred from the District Court. Clearly, the word "determine" is not used as a synonym for "transfer," and it is not obvious that the power to "determine" the appellate jurisdiction of the District Court includes the power to abolish it by "transfer" to another court. We fully agree with Judge Kennedy dissenting in *Agana Bay,* 529 F. 2d, at 959, that Congress used "determine" because Congress "more likely intended to permit the local legislature to decide what cases were serious enough to be appealable," and we note that the Guam Legislature found no broader authority in the term for the 23 years from 1951 to 1974. We therefore conclude that Congress expressly authorized a "transfer" of the District Court's original jurisdiction but withheld a like power respecting the court's appellate jurisdiction, empowering Guam to "determine" the District Court's appellate jurisdiction only in the sense of the selection of what should constitute appealable causes.[9]

Other considerations besides our reading of the bare text support the conclusion that the power to "determine" should not be construed to include the power to "transfer" without more persuasive indicia of a congressional purpose to clothe the Guam Legislature with this authority.

First, we should be reluctant without a clear signal from Congress to conclude that it intended to allow the Guam Legislature to foreclose appellate review by Art. III courts, including this Court, of decisions of territorial courts in cases that may turn on questions of federal law. Important federal issues can be presented in cases which do not fall within the District Court's federal-question jurisdiction, because they do not "arise under" federal law, but instead fall within the exclusive jurisdiction vested in the Superior and Supreme Courts by the Reorganization Act. For example, criminal convic-

---

[9] This case does not present, and we intimate no view upon, the question of what categories of cases the Guam Legislature is authorized to determine are nonappealable under § 22 of the Act.

tions returned in the Superior Court and appealable under the Court Reorganization Act only to the Supreme Court, may be challenged as violating federal constitutional guarantees. It is no answer that rejection of a federal constitutional defense by the Guam courts, though not presently directly reviewable by the Court of Appeals for the Ninth Circuit or by this Court, may nevertheless be reviewable in federal habeas corpus. Tr. of Oral Arg. 9. Habeas corpus review has different historical roots from direct review and different jurisprudential functions and limitations. See, *e. g., Fay* v. *Noia,* 372 U. S. 391 (1963). As respects civil cases, though the "arising under" jurisdiction vested in the District Court by § 22 (a) tracks the general federal-question statute, 28 U. S. C. § 1331 (a), clearly—whatever may be the ambiguities of the phrase "arising under"—it does not embrace all civil cases that may present questions of federal law. See, *e. g., Gully* v. *First Nat. Bank,* 299 U. S. 109 (1936); Cohen, The Broken Compass: The Requirement that a Case Arise "Directly" under Federal Law, 115 U. Pa. L. Rev. 890 (1967). We are therefore reluctant to conclude that, merely because power to "determine" may as a matter of dictionary definition include power to "transfer," Congress intended to confer on the Guam Legislature the power to eliminate review in Art. III courts of all federal issues presented in cases brought in the local courts.

Second, nothing in the legislative history of the Organic Act of 1950 even remotely suggests that Congress intended by its use of the word "determine" to give the Guam Legislature the option of creating a local Supreme Court having the power of ultimate review of cases involving local matters. Rather, the legislative history points the other way. Three bills introduced in the 81st Congress provided for a judicial system for Guam. Hearings on S. 185, S. 1892, and H. R. 7273 before the Subcommittee of the Senate Committee on Interior and Insular Affairs, 81st Cong., 2d Sess., 1–25 (1950) (hereafter Hearings). All three provided for appellate review by Art. III

courts of territorial court decisions. The bill that became the Organic Act, H. R. 7273, originally established a Supreme Court of Guam whose decisions were to be reviewable by the Court of Appeals for the Ninth Circuit and by this Court. Hearings 22–23. The proposal for a congressionally created Supreme Court was rejected in favor of a Federal District Court. This was done in part to provide "litigants in the Western Pacific with direct access to the federal court system." *Agana Bay Dev. Co., Ltd.* v. *Supreme Court of Guam, supra,* at 961 (Kennedy, J., dissenting); S. Rep. No. 2109, 81st Cong., 2d Sess., 4 (1950). But another concern accounts for the provision giving the District Court jurisdiction in local matters. Our independent review of the pertinent legislative materials confirms, and we therefore adopt, Judge Kennedy's conclusion expressed in dissent in *Agana Bay, supra,* at 961:

> "Because of concern that there would not be sufficient federal question litigation to justify a separate district court in Guam, the court was given original jurisdiction in local matters. It was also envisioned that the district court would serve as an appellate body once local courts were established. The apparent reason for eliminating the provision for a local supreme court was to avoid duplicative judicial machinery, rather than to allow local authorities to put certain controversies beyond review by the federal court system."

Third, if the word "determine" is to be read as giving Guam the power to transfer the District Court's appellate jurisdiction to the Supreme Court and, by the same stroke, to authorize Guam to deny review of the court's decisions by any Art. III tribunal, Congress has given Guam a power not granted any other Territory. Congress has consistently provided for appellate review by Art. III courts of decisions of local courts of the other Territories.[10] What history there

[10] See, *e. g.*, 31 Stat. 141 (§ 86), 36 Stat. 1087, 43 Stat. 936 (Hawaii); 31 Stat. 321 (§§ 504, 507) (Alaska); 31 Stat. 77 (§ 35), 38 Stat. 803, 39

is points to a purpose to create a similar system for Guam. Hearings, *supra;* S. Rep. No. 2109, 81st Cong., 2d Sess. (1950). We are unwilling to say that Congress made an extraordinary exception in the case of Guam, at least without some clearer indication of that purpose than the word "determine" provides. Moreover, we should hesitate to attribute such a purpose to Congress since a construction that denied Guam litigants access to Art. III courts for appellate review of local-court decisions might present constitutional questions. See generally Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362 (1953).

*Affirmed.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE STEWART, MR. JUSTICE REHNQUIST, and MR. JUSTICE STEVENS join, dissenting.

Although this case may at first glance seem unimportant to anyone but the residents of Guam, the result of the Court's

---

Stat. 951 (§§ 42, 43) (Puerto Rico); 76A Stat. 51 (Canal Zone); 39 Stat. 1132 (§ 2), 43 Stat. 936, 49 Stat. 1807 (§§ 25, 30), 48 U. S. C. § 1612, 90 Stat. 2899 (Virgin Islands); 90 Stat. 263 (§§ 402, 403) (Northern Mariana Islands).

¹We note that Pub. L. 94–584, enacted in 1976 about a month before our grant of certiorari in this case, authorizes Guam to adopt a constitution for its own self-government but expressly provides that a provision of the territorial constitution establishing a system of local courts "shall become effective no sooner than upon the enactment of legislation regulating the relationship between the local courts of Guam with the Federal judicial system." § 2 (b)(7), 90 Stat. 2899. This suggests that Congress contemplates that Guam's judiciary should be treated like the judiciaries of other Territories whose judgments are subject to review by Art. III courts. The Guam Legislature has already enacted legislation to provide for a constitutional convention. Act of Dec. 10, 1976, Guam Pub. L. 13–202. Although this may eventually produce a judicial system complying with § 2 (b)(7) of Pub. L. 94–584 and subject to appellate review in Art. III courts, we perceive nothing in this prospect that should cause us to abstain from decision of the issues presented in this case.

decision is perhaps unprecedented in our history. The Court today abolishes the Supreme Court of Guam, a significant part of the system of self-government established by some 85,000 American citizens through their freely elected legislature.[1]

The Court's error, in my view, lies in its misinterpretation of the Organic Act of Guam. I do not doubt that Congress has the authority in the exercise of its plenary power over Territories of the United States, Art. IV, § 3, to reverse Guam's decision to reorganize its local court system. In this case, however, Congress has plainly authorized enactment of the challenged legislation, while there has been no corresponding delegation to this Court of the congressional power to veto such laws. Because "our judicial function" is limited "to apply[ing] statutes on the basis of what Congress has written, not what Congress might have written," *United States* v. *Great Northern R. Co.*, 343 U. S. 562, 575 (1952), I must respectfully dissent.

In reaching its decision, the Court focuses exclusively on the meaning of the second half of the second sentence of § 22 (a) of the Organic Act of Guam, 64 Stat. 389.[2] With all respect, this approach ignores the horse while concentrating on minute details of the cart's design. If the sentences of § 22

---

[1] See U. S. Dept. of Commerce, Statistical Abstract of the United States 855, 856 (1976); 8 U. S. C. § 1407; Guam Govt. Code § 2056 (1970).

[2] This statute, prior to a 1958. amendment, provided in pertinent part:

"There is hereby created a court of record to be designated the 'District Court of Guam', and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of title 28, United States Code, and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine. The jurisdiction of and the procedure in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam."

(a) are simply read in the order in which they are written, their meaning is plain without resort to complex exegesis.

The first sentence creates the federal "District Court of Guam." It goes on to provide that "the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam." This language is strikingly similar to the familiar words of Art. III, § 1: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Both provisions describe the bodies that will exercise the judicial power. They name one court and mandate its establishment. They leave the creation of the remainder of the court system to the legislature. But there is one key distinction: Where Art. III expressly describes the relationship among the courts, making one "supreme" and the others "inferior," § 22 (a) is silent.

The only reasonable conclusion that can be drawn from this distinction is that the Organic Act, unlike our Constitution, was intended to allow the elected representatives of the people governed by the courts to control the relationship among the courts. The absence of any indication of a superior-inferior structure in § 22 (a) also indicates that there is no reason to consider the federal and local courts other than co-equal in matters as to which they share jurisdiction, i. e., cases that might be appealed. Rather, the conspicuously incomplete emulation of the well-known Art. III model suggests that the people of Guam may terminate the District Court's appellate jurisdiction.

The Court ascribes great significance to the different language used to describe the legislature's power to "transfer" trial jurisdiction to the local courts, as contrasted with the power to "determine" appellate jurisdiction. The words, read in context, seem to me to be no more than alternative expressions for the same concept, used in the interest of avoiding

repetition. Thus, the first sentence of § 22 (a) gives Guam the authority to establish any courts it deems necessary. The last sentence of the section, also ignored in the Court's analysis, gives Guam the power to prescribe the "jurisdiction of and procedure in" such local courts. "Determine" as used in the context of the second sentence of § 22 (a) is an obvious synonym for "grant." If the Guam Legislature may grant the District Court appellate jurisdiction in the first instance, it has the converse power to withdraw it. Read as a whole, § 22 (a) plainly encompasses the power to give all appellate jurisdiction to a local court.

The Court relies on the fact that this interpretation of the Organic Act might insulate decisions of the local courts that involve questions of federal constitutional or statutory law from review in Art. III courts, something which other territorial charters have apparently not granted. With respect to the latter point, it is worth noting that Guam is a small and isolated possession that Congress might well have wished to give unusual autonomy in local affairs. No doubt, too, Congress' sense of the proper way to govern far-distant citizens has changed considerably in recent decades from the expansionist ethic which prevailed when Hawaii was annexed, the Spanish possessions (including Guam) ceded, and the Virgin Islands purchased. It is thus not surprising to find a broad authorization for self-government granted by the Organic Act passed in 1950. And it speaks well for the good sense of the people of Guam that they observed the functioning of the judicial system on their island for 23 years before deciding that a local appellate court would best serve their needs. This hiatus, therefore, does not indicate that Guam lacked the power to act, as the Court assumes, *ante*, at 201, but rather that the people deemed it unwise at that stage in their development to do so. Moreover, as careful analysis of the relevant sections of other territorial charters demonstrates, see *Agana Bay Dev. Co., Ltd.* v. *Supreme Court of Guam*, 529

F. 2d 952, 957–958 (CA9 1976), "the Guam Organic Act is unique and it delegates the widest powers of any of the territories to the legislature for the creation of appellate courts." *Id.*, at 957.

If there are constitutional problems with this interpretation of the Organic Act, see *ante*, at 201–202, 204, they do not arise from the action of the Guam Legislature in creating a local appellate court. Rather, they stem from the absence of a statute expressly providing for appeals from the Guam courts to an Art. III tribunal. As petitioner notes, Brief for Petitioner 15–19, Congress has in its dealings with Guam historically reacted to the developing legal needs of the island rather than anticipating them. See, *e. g., Corn* v. *Guam Coral Co.*, 318 F. 2d 622, 624–627 (CA9 1963). This is not surprising; since the Organic Act did not set up a local court structure, it was impossible for Congress to foresee the manner in which the system as actually established would mesh with the Art. III courts. Most recently, Congress authorized Guam to design a local court system as part of the drafting of a new constitution, recognizing that it would thereafter be necessary to enact legislation "regulating the relationship between the local courts of Guam and the Federal judicial system." Pub. L. No. 94–584, 90 Stat. 2899, § 2 (b) (7).

In view of the willingness of Congress to accommodate both the aspirations of the people of Guam and the requirements of federal jurisdiction, I think there is no need to search for constitutional questions where none yet exist.[3] In the meantime, we should not eviscerate the court system carefully devised by the people of Guam in the exercise of their right of self-government.

I respectfully dissent.

---

[3] Nowhere in respondent's presentation to this Court is there any claim of federal constitutional or statutory infirmities in his conviction for violation of the laws of Guam.