James F. **LAWLOR**

v.

**INCRES NASSAU STEAMSHIP LINE,**
Inc.

Civ. A. No. 56–1079.

United States District Court
D. Massachusetts.

May 8, 1958.

Henry Lawlor, Boston, Mass., for plaintiff.

Robert J. Hallisey, Seymour P. Edgerton, Bingham, Dana & Gould, Boston, Mass., for defendant.

WYZANSKI, District Judge.

Plaintiff brings this action for personal injuries allegedly attributable to defendant's negligence while he was boarding a tender or launch in Havana.

In Connecticut plaintiff and defendant entered into a contract for plaintiff's travel as a first class cruise passenger on the S.S. Nassau sailing on a "Nassau-Havana Cruise" February 24, 1956 from New York. The contract provided in paragraph 12c:

"Every responsibility of the Carrier hereunder shall be limited to that period only whilst the Passenger and his baggage and other property are being transported over the Carrier's own line to a port or place in such port as the Vessel may safely get. All other transportation or service (including railroad, automobile, air or other shore transportation, transportation by tender or vessel not belonging to or operated by the Carrier, shore excursions, shore hotel or restaurant accommodations and services) shall be at the risk of the Passenger and the Carrier shall be under no responsibility in connection therewith and any money received by the Carrier or by

any of its employees in respect of such transportation or services is received only as the Passenger's agent to pay the same over to those furnishing such transportation or service. The Carrier does not undertake to transport the Passssenger or his baggage between the anchorage and landing in cases where landing is not made by the Vessel, and such transportation shall be paid for by the Passenger."

When the vessel reached Havana February 29, 1956 it anchored in the harbor; it did not land at a dock. As plaintiff's agent, defendant purchased for him transportation by tender from the S.S. Nassau to the dock and return. Neither the dock nor the tender was owned or operated by defendant. Likewise, as plaintiff's agent, defendant purchased for him "restaurant accommodations" including drinks at each of three Havana night clubs.

Using these tickets, plaintiff went ashore. At 4 a. m. March 1 he together with 50 to 100 other people was waiting at the Havana dock for the tender to take them back to the S.S. Nassau. According to his story, the dock was overcrowded; defendant had only one employee (a seaman) on hand to help the passengers, when plaintiff tried to board the tender he was assisted by that employee who through a failure to exercise due care allowed plaintiff to slip into the water thus injuring his leg.

Defendant denied that the seaman, if any there was, who assisted him failed to exercise due care; that the seaman was an employee of defendant; that if the seaman was defendant's employee he acted within the scope of his authority; and that liability could be based on any act or omission which occurred during the period of the passenger's transfer from the dock to the tender. Defendant also alleged that plaintiff himself failed to exercise due care both in his manner of boarding the tender and in having drunk so much at the night clubs that he was intoxicated; and that those failures caused the injury.

This Court separated the issues of liability from the issues of damage and put to the jury the following form of verdict, with instructions to them to check one but only one of the four choices:

"Was the plaintiff's accident due in whole or in part to—

"1. The lack of due care of the plaintiff?

"2. The lack of due care of one of the defendant's employees?

"3. The lack of due care of both the plaintiff and one of the defendant's employees?

"4. Some other cause?

_____

"Foreman"

Initially the jury sought to return as its verdict No. 4 with the following comment,

"In our best judgment the defendant acknowledged its responsibility by having one of its employees on the tender at dockside assisting the passengers onto the tender. They did not have enough personnel to safely take care of the 100 or more passengers. Therefor [sic] the jury voted the defendant at fault.

"Foreman

"Alfred Clifford"

The Court refused to accept this verdict because of the essay type of answer. The jury then retired to the jury room and after further deliberation returned a verdict form with the second choice checked.

At the close of plaintiff's case, defendant had moved for a directed verdict. The Court reserved decision. Again after the verdict on liability defendant moved for judgment notwithstanding the verdict. This Court now denies both motions.

■ 1. Plaintiff's cause of action "is founded on a maritime tort, cognizable in admiralty; and hence the substantive law to be applied is the 'general maritime law'". Jansson v. Swedish-Amer-

ican Line, 1 Cir., 185 F.2d 212, 216, 30 A.L.R.2d 1385.

2. This Court's jurisdiction to hear the action may rest on the diversity jurisdiction statute 28 U.S.C. § 1332. It might also rest upon the admiralty jurisdiction conferred by 28 U.S.C. § 1333. Jenkins v. Roderick, D.C.D.Mass., 156 F. Supp. 299, 302. The Court of Appeals has ruled that this Court has jurisdiction also by virtue of the so-called "arising under" clause in 28 U.S.C. § 1331. Doucette v. Vincent, 1 Cir., 194 F.2d 834. But see Jenkins v. Roderick, supra. If the case rests on diversity jurisdiction, a jury may be claimed. But *quaere* whether it may be claimed if jurisdiction rests on § 1331. See Doucette v. Vincent and Jenkins v. Roderick. A jury is purely advisory if used in a § 1333 proceeding. In my opinion, the first of these three choices was elected by plaintiff.

3. Whatever be the correct jurisdictional basis of this case, it is clear that the substantive law governing this action is subject to the ultimate exposition of the Supreme Court of the United States. In formulating this substantive law, the Supreme Court and, at least until it speaks, inferior courts must confront "choice of law problems." Jansson, supra, 185 F.2d at page 218. In the case at bar there are choice of law problems both with respect to obligations sounding in contract and obligations sounding in tort.

4. There being no indication that the parties contemplated the application of any other law, the federal statutes and the uncodified maritime law developed by the federal courts govern the interpretation and validity of a contract made in the United States, between a passenger and a carrier, providing that the passenger shall be carried by vessel from New York to Nassau to Havana. Jansson, 185 F.2d at pages 218–219. State law is not authoritative; neither is foreign law.

5. So far as concerns liability in tort, however, the governing law is not the *lex loci contractus* but the *lex loci delicti,* Cuba, the place where both the alleged wrongful act and its impact occurred. Jansson, 185 F.2d at page 218.

6. In this case the parties did not offer to prove the law of Cuba. Hence with respect not merely to the contract and its exculpatory clauses but also the tort liabilities, if any, the governing rules are in this case to be drawn exclusively from the maritime law applied by the federal courts.

7. A carrier that contracts to take a passenger on a cruise stopping at a designated foreign port has a duty if the vessel anchors in that harbor to provide him with safe transportation, *under adequate supervision,* to and from the dock. The Valencia, D.C.D.Wash., 110 F. 221, 223. Of course, this duty might be affected by special circumstances, which did not exist in this case, such as the existence of a revolution or epidemic in the foreign country which led the carrier to refuse to assume the responsibility of landing a passenger except at his own risk. However, under ordinary circumstances, such as existed in this case, an attempt on the part of the carrier to contract out of this sphere of duty and to limit himself to protecting the passenger only while he is on the vessel is repugnant to the essence of the voyage. One of the principal purposes of the trip is for the passenger to go ashore at Caribbean ports. It would never occur to the average passenger that the carrier was not undertaking any responsibility for landing him or bringing him back to the vessel. He would be unlikely to look for or read an exculpatory provision covering such a matter. Moreover, there is no particular reason why a carrier needs such drastic self-protection. From these considerations it follows that insofar as it attempts to immunize the carrier from *any* responsibility whatsoever during the *period* of time the passenger is going to and from the dock the exculpatory clause is against public policy. The Valencia, supra. Cf. 46 U.S.C.A. § 183c.

8. This is not to say whether the exculpatory clause protects a carrier who uses the highest care in selecting a third person to carry the passenger to the dock, but the passenger is nonetheless injured by the negligence of the third party. Such a question would raise issues as to whether the carrier was performing a nondelegable duty. See the various opinions, particularly of Justices Clark and Whittaker in Sinkler v. Missouri Pacific R. Co., 78 S.Ct. 758. In the instant case it is unnecessary to decide that question in view of the fact that the jury apparently found that the negligent person was an employee of defendant, not an independent contractor. Nor is it necessary to decide the question whether the carrier has any duty of care while the passenger is in a night club, and if so whether it depends on a showing that the carrier received for its own benefit part of the proceeds of the sale of night club tickets.

█ 9. From the preceding paragraphs it follows that I not only accept but, on reflection, find in accordance with the final verdict of the jury almost for the reasons that they themselves tried to give the Court when they first reported their proposed verdict. That is, I find that plaintiff's injury was caused entirely by the failure of the carrier to provide adequate protection at the point where returning passengers boarded the tender. The carrier should have known that passengers would return at about 4 a. m. slightly under the influence of liquor. Indeed, the carrier encouraged just such conduct. And the carrier failed to provide, by its own employees or by independent contractors, adequate safeguards.

10. But if the jury and I are in error, and the carrier can validly limit its liability qua carrier to events befalling plaintiff while on the vessel, nonetheless there is in this case another theory on which defendant is liable to plaintiff. The jury could have believed, and in its final verdict may have believed, that plaintiff was injured by the careless act of defendant's employee in helping him aboard and that in so acting defendant's employee was within the scope of his authority. To be sure there was no direct proof of the authority of defendant's employee Bagnasco. But it was reasonable to infer that the Captain directed Bagnasco to help passengers on to the launch, and that Bagnasco did this in a negligent manner.

█ 11. If defendant's authorized servant acting within the scope of his authority in assisting plaintiff, acted negligently defendant is liable even though the injury did not occur while he was in the status of a passenger on the carrier's vessel. Shulman v. Compagne Generale Transatlantique, D.C.S.D.N.Y., 152 F.Supp. 833, 836; Ransom v. Dollar S.S. Line, D.C.D.Wash., 2 F.Supp. 409. Cf. Federal Ins. Co. v. American Export Lines, D.C.S.D.N.Y., 113 F.Supp. 540. Like any other employer, defendant is responsible when his employees in the course of their employment fail to exercise due care. In connection with such a liability the exculpatory clause is irrelevant. Ibid.

12. To be sure, a carrier's duty under the circumstances discussed in the last paragraph is merely to exercise due care, not the highest care. My charge did not make this discrimination. However, to that error no exception was taken.

Defendant's motions are denied.