**Martha ISHAM, Plaintiff-Appellee,**

v.

**PACIFIC FAR EAST LINE, INC., Defendant-Appellant.**

**No. 72-1438.**

United States Court of Appeals, Ninth Circuit.

April 9, 1973.

Rehearing Denied May 11, 1973.

George L. Waddell (argued), Daniel M. Blumenfeld, William K. Mordock, Jr., Dorr, Cooper & Hays, San Francisco, Cal., W. Scott Barrett, Barrett, Ferentz & Bramhill, Agana, Guam, for defendant-appellant.

Howard G. Trapp (argued), Trapp, Gayle & Co., Agana, Guam, for plaintiff-appellee.

Before CHAMBERS, ELY and WALLACE, Circuit Judges.

CHAMBERS, Circuit Judge:

Martha Isham brought this personal injury action against Pacific Far East Line, Inc. (hereinafter Far East) in the District Court of Guam. Jurisdiction was based on diversity and the Organic Act of Guam, 48 U.S.C. § 1424(a).

Her husband was stationed on Guam while serving in the Navy. In the spring of 1968, Mrs. Isham purchased a passenger ticket to travel on the Far East freighter, the *India Bear*, from San Francisco, California, to Guam. The *India Bear* made a stop at Honolulu to take on and discharge cargo.

On May 5, 1968, the *India Bear* put in at Wake Island. Wake does not have a deep water harbor. Ships lie at anchor offshore, and landing craft (LCM's) shuttle back and forth between ships and the docks. Wake is under the control of the Federal Aviation Administration (FAA). The FAA also operates the LCM's that shuttle between the docks and ships at anchor. Far East crewmembers who have shore leave and passengers who wish to visit Wake also ride in the LCM's.[1]

On the evening of May 5, several passengers from the *India Bear*, including Mrs. Isham, went ashore to visit Wake. Around 10:00 p. m., the passengers and several crew-members boarded the LCM for the return to the *India Bear*. The LCM was operated by Ichito Nagao, an FAA employee. Shortly after leaving the dock, the LCM struck a barge because of Nagao's carelessness. Mrs. Isham was thrown forward into the well of the ship. She broke both her wrists and injured her back. After receiving first aid at Wake, she was flown to Guam where she received care and recuperated in a U. S. Navy hospital. She continues to have some discomfort in her right wrist and occasional low back pains. Both ailments respond to aspirin.

A jury awarded her $90,000 for her injuries, a rather handsome amount considering the injuries. Far East has appealed the judgment against it.

■ We consider the extent of Far East's duty to provide its passengers at wayports such as Wake with passage ashore. The parties agree that a shipowner owes his passengers a high degree of care.[2] However, a passenger must recover, if at all, because of negligence; the shipowner does not owe a duty to passengers, as he does to seamen, to provide a "seaworthy" vessel. Tullis v. Fidelity & Casualty Co. of New York, 397 F.2d 22 (5th Cir. 1968). Also see The Oregon, 133 F. 609, 618 (9th Cir. 1904).

Mrs. Isham has claimed all along that Far East has a non-delegable duty to provide proper and safe transportation between the *India Bear* anchorage and Wake Island.[3] In order to recover on such a theory, a plaintiff must first establish the duty, then that duty's nondelegability.

The basis on which Mrs Isham seeks to establish the duty is the long-established rule that embarking and disembarking are a part of the voyage which the shipowner agrees to provide. In The Valencia, 110 F.2d 221 (D.Wash. 1901), aff'd sub nom Pacific Steam Whaling Co. v. Grismore, 117 F. 68 (9th

---

1. While at Wake, Far East ships pay the FAA $30 per day for LCM service.

2. This duty exists for the owner of a freighter that carries passengers only incidentally as well as for the owner of a vessel primarily engaged in the carriage of passengers for hire. The Black Gull, 144 F.Supp. 47 (S.D.N.Y.1956).

3. See Restatement of the Law Second, Torts, §§ 416, et seq. (1965).

Cir. 1902), miners traveling to Alaska to seek gold were put ashore at Nome with virtually no facilities for protection and without their baggage and equipment. The court granted them recovery for injuries suffered as a result of exposure to the elements caused by the negligent manner in which the shipowner provided for disembarking.

█ Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the sine qua non of the cruise. In such a situation, the shipowner has a duty to exercise a high degree of care in seeing to the safe embarking and disembarking of the passengers. Lawlor v. Incres Nassau S.S. Lines, 161 F.Supp. 764 (D. Mass.1958).

The question in this case is whether Far East had a duty to provide safe passage ashore at Wake. We believe that whether such a duty exists depends ultimately on the totality of circumstances. Cf. Kermarec v. Compagne Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

The clearest case for requiring safe passage is presented in The Valencia, supra. Regardless of other factors, any vessel which engages in the carriage of passengers for hire has a duty to provide for embarking and disembarking at the beginning and end of the voyage. In so providing, he must exercise a high degree of care. Similarly, where, as in Lawlor, supra, a passenger cruise ship entices people aboard with the promise of stopovers in exotic ports, the shipowner must see to those passengers' safe embarking and disembarking in each such port.

█ In our case, Mrs. Isham purchased passage from San Francisco to Guam on a ship whose primary purpose was transportation of cargo. She was not told that she could expect a pleasure cruise. The *India Bear* carried a dozen or fewer passengers, and carrying passengers was incidental to the cargo business. The stop at Wake was for the purpose of taking on and discharging cargo. No showing was made that the stop at Wake was part of the inducement offered her for traveling on the *India Bear*. Mrs. Isham was not encouraged to go ashore.[4] The craft on which she went ashore and was to return was not owned by Far East. The ship made passage on the boat available to the crew and to such passengers who wished to use it.[5]

We hold that on the facts of this case Far East had no duty to provide passengers with transportation ashore at Wake. As to Mrs. Isham, this was not the beginning or the end of the voyage. Freighter passage is not ordinarily a pleasure cruise. If Far East had made a call at Wake a part of the inducement for passengers to travel Far East, we would have a different case.

Mrs. Isham could have claimed that Far East was negligent in allowing her to use a craft that was known to be dangerous or that was known to be operated carelessly. No such claim was pleaded, and we do not believe that any such claim was raised by the proof. See F.R.Civ.P. Rule 15(b).

On a related ground, Mrs. Isham contended throughout that Ichito Nagao, the LCM operator, was Far East's agent, and therefore Nagao's negligence should be imputed to Far East. All the evidence shows that Nagao was employed by and acting in behalf of the FAA. After the judge had instructed the jury, he asked counsel if they had any objections to the instructions or suggestions for further instructions. At the

4. Mrs. Isham's ticket contained a provision excluding liability for landings at intermediate stops. The ticket also stated that no launch would be provided at Wake, and that passengers used available facilities at their peril. We intimate no view of the validity of the ticket provisions purporting to exclude liability. See 46 U.S.C. § 183c. We think that the ticket was admissible to show Mrs. Isham's reasonable expectations.

5. See Miles v. States Marine Lines, 325 F.Supp. 1370 (E.D.Tex.1971).

request of counsel for Mrs. Isham, the judge instructed the jury, "If in this case you should find that the operator of the launch, Mr. Nagao, is negligent in his operation of such launch, that such negligence is imputed to the defendant, Pacific Far East Lines, Incorporated." The instructions as given almost amounted to a directed verdict for the plaintiff.

There may have been a good Federal Tort claims case based on liability of the FAA, but we cannot transfer its liability to Far East.

The judgment is reversed.