Eleanor F. MAILLOUX,
Plaintiff-Appellee,

v.

Gordon E. MAILLOUX and Marianas
Pacific, Inc., Defendants-Appellees,

and

Chase Manhattan Bank (National Associ-
ation), Defendant-Appellant.

SOUTH ACRES DEVELOPMENT CO., a
partnership, Plaintiff-Appellee,

v.

CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION),
Defendant-Appellant.

Nos. 75–2898, 76–1836.

United States Court of Appeals,
Ninth Circuit.

May 31, 1977.

Rehearing and Rehearing En Banc
Denied July 20, 1977.

Howard G. Trapp, submitted on brief, Trapp, Gayle, Teker, Hammer & Lacy, Agana, Guam, for defendant-appellant.

John C. Dierking, submitted on brief, Agana, Guam, for appellee, Mailloux.

Ching, Rosenzweig, Boertzel & Price, Agana, Guam, for plaintiff-appellee South Acres.

Before HUFSTEDLER, WRIGHT and SNEED, Circuit Judges.

HUFSTEDLER, Circuit Judge:

This appeal presents the question whether there is a diversity jurisdiction analog in the District Court of Guam over causes of action which the Guam legislature has otherwise lodged in the Guam Island Court.[1] Plaintiff Eleanor Mailloux, a citizen of West Virginia, brought this action to enforce a marital settlement agreement against her former husband, a citizen and resident of Guam, and joined the Chase Manhattan Bank as a codefendant because it had received the proceeds from the sale of the property in dispute. The action was brought in the Guam District Court which decided that it had jurisdiction under section 1424(a) of the Organic Act of Guam (48 U.S.C. § 1424(a)), in light of 28 U.S.C. § 1332(d).

1. The decision below is reported at 417 F.Supp. 11.

■ Congress did not specifically address the question whether federal diversity jurisdiction would exist after the Guamanian legislature transferred local causes of action to the Island Court. Both the Organic Act and the 1958 revision of its judiciary section are silent on the point. We reach the conclusion that Congress intended that the Guam District Court have diversity jurisdiction analogous to that of a federal district court within the States, because a major purpose of the Organic Act was to bring to Guam a judiciary closely analogous to that of the United States and, particularly, to grant to the citizens of Guam the benefits of the privileges and immunities clauses of the Federal Constitution, which include access to federal courts in diversity cases as long as diversity jurisdiction is a federal jurisdictional component.

The Organic Act grants the District Court of Guam "jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties, and laws of the United States, regardless of the sum or value of the matter in controversy . . . .." The words "arising under the . . . laws of the United States" are not automatically selfdefining, and they have meant different things in different contexts. (*Compare Osborn v. Bank of United States* (1824) 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204 ("arising under" in the context of Article III) *with Louisville & Nashville R. R. v. Mottley* (1908) 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 ("arising under" in the context of 28 U.S.C. § 1331). *See also Textile Workers Union v. Lincoln Mills* (1957) 353 U.S. 448, 473–78, 77 S.Ct. 912, 1 L.Ed.2d 972 (Frankfurter, J., dissenting) (discussion of protective jurisdiction and construction of "arising under . . . the laws of the United States"); P. Bator, D. Shapiro, P. Mishkin, and H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 850–73 (1973).)

■ We read the "arising under . . . ." language in the Organic Act in conjunction with the more recent enactment of section 1421b(u), extending the privileges and immunities clauses of the Federal Constitution to Guam, to help us solve the diversity riddle.[2] The extension to Guamanian citizens of the privileges and immunities of national citizenship[3] was intended to "guarantee to all U.S. citizens in or entering Guam—including corporations of any of the United States—rights of national citizenship such as . . . the right to appeal in proper cases to the national courts, and the right of protection abroad."[4] The privileges of national citi-

---

**2.** 48 U.S.C. § 1421b(u):

"The following provisions of and amendments to the Constitution of the United States are hereby extended to Guam to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States: . . . article IV, section 1 and section 2, clause 1; . . . the second sentence of section 1 of the fourteenth amendment . . . .."

"All laws enacted by Congress with respect to Guam and all laws enacted by the territorial legislature of Guam which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency."

**3.** The statute also extends the privileges and immunities clause of Article IV to Guam. The Article IV clause secures a different set of privileges and immunities than does the clause in the Fourteenth Amendment:

"The protection extended to citizens of the United States by the privileges and immunities clause [of the Fourteenth Amendment] includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law." (*Snowden v. Hughes* (1944) 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497; *see Hamilton v. Regents* (1934) 293 U.S. 245, 261, 55 S.Ct. 197, 79 L.Ed. 343; *Chambers v. Baltimore & Ohio R. R.* (1907) 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143.)

**4.** S.Rep. No. 216, 90th Cong., 1st Sess. 12 (1967) (letter of February 19, 1967, from Assistant Secretary of Interior Harry R. Anderson to Senator Henry M. Jackson, Chairman of the Committee on Interior and Insular Affairs). The word "appeal" is used here not in the sense of appeal from a lower court decision but in the sense of presenting one's case to a court. The structure and procedure for appeal from decisions of the Guamanian courts was addressed in Public Law 85–444, Act of June 4, 1958, §§ 1, 2, 72 Stat. 178. *See Guam v. Olsen* (9th Cir. en banc 1976) 540 F.2d 1011, *cert.*

zenship [5] have been construed to include the right of access to federal courts via diversity jurisdiction. (*Terral v. Burke Construction Co.* (1922) 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (nonresident corporations have right to resort to federal courts under diversity and removal statutes which is of constitutional proportion; state cannot condition license on waiver of that right); *Garrity v. New Jersey* (1967) 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 ("There are rights of constitutional stature whose exercise a State may not condition by the exaction of a price. . . . Resort to the federal courts in diversity of citizenship cases is another."); *In re Southwestern Bell Telephone Co.* (5th Cir. 1976) 535 F.2d 859, 861, *modified* 542 F.2d 297 (en banc) ("Persons who meet those [diversity and removal] criteria have a statutory and indeed a constitutional, right to resort to the federal courts."); *Pennsylvania v. Local 542, Operating Engineers* (E.D.Pa.1972) 347 F.Supp. 268, 297.)

Congress intended that Guam should be treated as if it were a state for the purpose of applying the privileges and immunities clauses.[6] That purpose is fulfilled by reading section 1424(a) together with section 1421b(u) to provide the Guam District Court with diversity jurisdiction, thus giving Guamanian litigants access to the federal courts analogous to that guaranteed to litigants within the States by the privileges and immunities clause of the Fourteenth Amendment.

This interpretation of sections 1424(a) and 1421b(u) also implements the broad policies of the Organic Act of Guam which included providing Guam with a judiciary closely patterned on that of the United States.[7] (*Cf. Agana Bay Development Co., Ltd. v. Supreme Court of Guam* (9th Cir. 1976) 529 F.2d 952, 959 (Kennedy, J., dissenting) (adopted by the court *en banc* in *Guam v. Olsen* (1976) 540 F.2d 1011, 1012, *cert. granted*, 429 U.S. 959, 97 S.Ct. 380, 50 L.Ed.2d 325) (language should be construed in context of, and with reference to, the whole territorial structure established for Guam by Congress).)

AFFIRMED.

SNEED, Circuit Judge (dissenting):

I respectfully dissent. The Organic Act of Guam grants neither diversity nor removal jurisdiction to the District Court of Guam.

---

*granted*, 429 U.S. 959, 97 S.Ct. 380, 50 L.Ed.2d 325.

5. The privileges of national citizenship are those springing from the Constitution and *laws of the United States*. *See Snowden v. Hughes* (1944) 321 U.S. 1, 6–7, 64 S.Ct. 397, 88 L.Ed. 497; *Hamilton v. Regents* (1934) 293 U.S. 245, 261, 55 S.Ct. 197, 79 L.Ed. 343. Congress has a role in *defining the contour of the privileges and immunities clause* of the Fourteenth Amendment. Contrary to the implications of the dissent privileges and immunities of federal citizenship are *not limited to those* "that Congress cannot deny to the citizens of the United States." (*Infra*, at 983.) Although there is no constitutional compulsion requiring Congress to create inferior federal courts or diversity jurisdiction, once Congress has created them there is a right of federal citizenship to use of the federal courts in diversity cases protected from State-created restrictions by the privileges and immunities clause of the Fourteenth Amendment. (*See generally Terral v. Burke Construction Co.* (1922) 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352.)

6. *See* Leibowitz, "The Applicability of Federal Law to Guam," 16 Va.J. Int'l L. 21, 30 & n. 43 (1975). The only limit on the application of the privileges and immunities clauses to Guam is that their application must not be inconsistent with the status of Guam as an "unincorporated territory." (H.R.Rep. No. 1521, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News, p. 3564. *See generally* Coudert, "Evolution of the Doctrine of Territorial Incorporation," 26 Colum.L.Rev. 823 (1926).) Giving full scope to the rights enumerated in § 1421b(u) does not create any inconsistency because the congressional intent not to incorporate Guam is clear. *Guam v. Inglett* (9th Cir. 1969) 417 F.2d 123, 125, *overruled on other grounds; United States v. Frame* (9th Cir. 1972) 454 F.2d 1136, 1138; *see Leibowitz*, "The Applicability of Federal Law to Guam," 16 Va.J. Int'l L. 21, 23–33 (1975).

7. S.Rep. No. 2109, 81st Cong., 2d Sess., *reprinted in* [1950] U.S.Code Cong.Serv., pp. 2840–41, 2843. *See also Pugh v. United States* (9th Cir. 1954) 212 F.2d 761, 766–67 (Denman, J., concurring).

The majority opinion asserts that a congressional intent to extend diversity jurisdiction to the District Court of Guam can be gleaned from a combined reading of sections 1421b(u) and 1424(a) of the Organic Act of Guam, 48 U.S.C. §§ 1421, et seq. (1970). Even the majority implicitly recognizes that section 1424(a), which gives the District Court of Guam jurisdiction over controversies "arising under" the laws of the United States, cannot by itself support a finding of diversity jurisdiction. But the majority argues that the "arising under" language of section 1424(a) presents a "diversity riddle" that is solved by reference to section 1421b(u) of the Organic Act, extending to Guam the privileges and immunities clauses of the Constitution. According to the majority, one of the privileges of national citizenship so extended is the "right of access to federal courts via diversity jurisdiction."

The majority is mistaken. Section 1424(a) is not ambiguous. The relevant clause gives the Guam district court jurisdiction over federal questions and nothing more. No "diversity riddle" is posed. Even if section 1424(a) were unclear, however, section 1421b(u) would not help to establish diversity jurisdiction since such jurisdiction is not a privilege of national citizenship undeniable by Congress.

## I.

*The Setting In Which The Issue Arises.*

To grasp the setting in which arises the issue these cases present, it is helpful to trace briefly the evolution of the legislation governing the jurisdiction of the District Court of Guam. To do this it is necessary to recall that the Territory of Guam was acquired by the United States under the Treaty of Paris ending the Spanish-American War in 1898. From then until 1950, complete authority over Guam was given to the Department of the Navy by Executive Order No. 108–A of December 23, 1898. The naval governors, among other exercises of powers, created courts and acted as judges. In 1950, realizing the progress the people of Guam had made toward self-government under the naval governors, Congress enacted the Organic Act of Guam of August 1, 1950, 64 Stat. 384, which established a civil government on the island.[1] In this manner, Guam became an organized, unincorporated territory.[2] Along with a territorial government and an appointive governor, the Act provided for the future establishment of local courts by the newly-created legislature and established the jurisdiction of the district court:

> The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of Title 28, and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine.

48 U.S.C. § 1424(a) (amended 1958).

The District Court of Guam under this scheme is a legislative court created pursuant to the constitutional power of Congress over the Territories, Art. IV, § 3, cl. 2, not a constitutional court created by way of the judicial power in Art. III, § 1.[3] As such, Congress under its plenary authority derived from Art. IV[4] may limit the court's

1. *See S.Rep. No.* 2109, *reprinted in* [1950] *U.S. Code Cong. & Ad.News* p. 2840.

2. Incorporated territories are those to which the Constitution has been extended fully by Congress. Unincorporated territories are not entitled to Constitutional guarantees in the absence of affirmative congressional action.

3. *American Ins. Co. v. Canter,* 26 U.S. (1 Pet.) 511, 545, 7 L.Ed. 242 (1828); *United States v.*

*Montanez,* 371 F.2d 79, 82 (2d Cir.), *cert. denied,* 389 U.S. 884, 88 S.Ct. 147, 19 L.Ed. 181 (1967); *United States v. Seagraves,* 100 F.Supp. 424, 425 (D.C.Guam 1951); *Wright, Federal Courts* § 11 at 37 (3d ed. 1976).

4. *Inter-Island Steam Navigation Co. v. Hawaii,* 305 U.S. 306, 314, 59 S.Ct. 202, 83 L.Ed. 189 (1938); *United States v. Gratiot,* 14 Pet. 526, 39 U.S. 526, 637, 10 L.Ed. 573 (1840); *Siegmund v. General Commodities Corp.,* 175 F.2d 952 (9th

jurisdiction as it wishes, and need not confer upon it the same jurisdiction as a district court established by virtue of Art. III.[5]

This plenary authority was exercised again in 1958 when section 1424(a) was amended to redefine the jurisdiction of the district court:

> The District Court of Guam shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties, and laws of the United States, regardless of the sum or value of the matter in controversy, shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine.

Cir. 1949); *NLRB v. Gonzalez Padin Co.*, 161 F.2d 353, 355 (1st Cir. 1947).

5. *Kinsella v. Krueger*, 351 U.S. 470, 475, 76 S.Ct. 886, 100 L.Ed. 1342 (1956), *reversed on other grounds*, *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1956); *Balzac v. Porto Rico*, 258 U.S. 298, 305, 42 S.Ct. 343, 66 L.Ed. 627 (1922); *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904); *Binns v. United States*, 194 U.S. 486, 491, 24 S.Ct. 816, 48 L.Ed. 1087 (1904); *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901).

6. *See also* Letter from Albert B. Maris, U.S. Circuit Judge for the Third Circuit, to Hon. Clair Engle, Chairman, Committee on Interior and Insular Affairs, March 14, 1957, *reprinted in* [1958] *U.S.Code Cong. & Ad.News* pp. 2628, 2628–29:

> This language [the original version of section 1424(a)] inadvertently limits the jurisdiction of the court over most Federal civil cases to those involving more than $3,000. This is because *section 1331* of title 28, United States Code, provides that the district courts of the United States shall have original jurisdiction of cases arising under the Constitution, laws, or treaties of the United States [of over $3,000 in value]. (Emphasis added.)

Section 1331 of title 28, United States Code is, of course, the federal question jurisdiction statute.

7. Section 1424(a) originally granted the District Court of Guam the jurisdiction of a "district court of the United States as such court is defined in section 451 of Title 28." Section 451 defines "district court of the United States" as "the courts constituted by chapter 5 of this title," which at the time of enactment of the

48 U.S.C. § 1424(a) (1970).

The purpose of the amendment as stated in the legislative history was to "broaden and clarify the district court's jurisdiction." *S.Rep.No.* 1582, *reprinted in* [1958] *U.S. Code Cong. & Ad.News* p. 2623. A comparison of the language of the original section with that of the amendment points to the conclusion that the "broadening" was to allow suits without the then necessary $3,000 jurisdictional amount in controversy as required by 28 U.S.C. § 1331 (amended 1958);[6] and the "clarification" was to specify that the district court was to have only federal question jurisdiction[7] and original jurisdiction of local causes until such time as the Guam legislature should transfer some or all of this latter jurisdiction to local courts created by it.[8]

To this point it was not necessary to confront the issue whether the District

original section listed the district courts of the forty-eight states. Since section 451 is the operative section which incorporates the district courts enumerated in chapter 5 into the provisions of the diversity jurisdiction statute, 28 U.S.C. § 1332 (1970), the inclusion of the District Court of Guam under the terms of section 451 might be viewed as an extension of diversity jurisdiction. However, the 1958 amendment of section 1424(a) deleted the reference to section 451 and made it clear that the District Court of Guam should have jurisdiction only over federal questions—"in all causes arising under the Constitution, treaties, and laws of the United States."

8. The fact that the legislative history accompanying the 1958 amendment is silent as to diversity jurisdiction, as pointed out by the majority, supports the conclusion that diversity jurisdiction was not contemplated. Congress certainly was aware of the distinction between federal question and diversity jurisdiction, yet chose to couch the jurisdictional grant to the Guam district court solely in terms of federal question jurisdiction as contained in the Constitution, Art. III, § 2, cl. 1, and the federal question statute, 28 U.S.C. § 1331(a) (1970).

Serving also to refute the majority position is the fact that by drawing diversity jurisdiction out of the terms of section 1424(a) the District Court of Guam would be able to entertain diversity actions without a jurisdictional amount in controversy. This was clearly the purpose of the 1958 amendment of the Organic Act as to federal question jurisdiction since it fulfills the general trend of reducing barriers to access to the federal courts for that type of case. *See Wright, supra,* § 32; *Bator, Mishkin, Shapiro & Wechsler, Hart and Wechsler's The Federal*

Court of Guam had diversity jurisdiction because it had original jurisdiction over all local "causes." Allegations of diverse citizenship played no part in the District Court of Guam's jurisdiction. The issue before us stems from the passage of the Court Reorganization Act of 1974, Guam Pub.L.No.12–85, § 55 (July 1, 1974), by which the Guam legislature exercised its option under Section 1424(a) to transfer jurisdiction of local causes from the district court to the local courts:[9]

> Except where an act of the United States Congress specifically vests jurisdiction of a cause in the District Court of Guam, every reference in law, rule or regulation to the original jurisdiction of the District Court of Guam, concerning a matter arising under the laws of Guam, shall be read and mean the Superior Court of Guam.

*Courts and the Federal System* 1141–42. However, allowing diversity actions without a jurisdictional amount in controversy would be contrary to the opposite trend of restricting the flow of diversity cases into federal court. *See* discussion of the contemporary utility of diversity jurisdiction, *Hart and Wechsler's The Federal Courts* 1053–59.

**9.** An examination of the jurisdictions of the district courts established in other territories demonstrates that Guam was the only Territory whose legislature was given the power to transfer jurisdiction over local causes away from the district court with no provision for the exercise of concurrent, removal or diversity jurisdiction as explicitly established in the judicial schemes of other Territories. The territorial district court most analogous to Guam's is that of the Virgin Islands. The Organic Act of the Virgin Islands of 1936 enumerated the expansive original jurisdiction of the district court, 48 U.S.C. § 1406 (provisions inconsistent with Act of July 22, 1954, repealed by implication), and provided the district court with concurrent jurisdiction over any causes transferred by the local legislature to the local courts, 48 U.S.C. § 1406d (provisions inconsistent with Act of July 22, 1954, repealed by implication). The Revised Organic Act of 1954 changes this situation only in granting exclusive jurisdiction over minor local causes to the local courts, 48 U.S.C. § 1613 (1970). The District Court of Puerto Rico was explicitly granted a broader diversity jurisdiction, 48 U.S.C. § 863 (repealed 1970), than that of the regular district courts. This special jurisdictional grant was repealed in

With this transfer, actions such as are involved here, each of which was a local "cause" under prior law, could be entertained only by the Superior Court of Guam in the absence of jurisdiction based on diversity in the District Court of Guam. Thus, we must confront the issue whether the District Court of Guam has diversity jurisdiction.[10]

## II.
### *Section 1424(a): "Arising Under" Federal Law.*

The "arising under" language of section 1424(a) embraces federal question jurisdiction but not diversity jurisdiction. Judge Kennedy, in his dissent in *Agana Bay Development Co. v. Supreme Court of Guam*, 529 F.2d 952 (9th Cir. 1976), which later was approved by this court in *Guam v. Olsen*, 540 F.2d 1011 (9th Cir.), cert. denied, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205

1970 in light of the "full integration of the district court in Puerto Rico into the Federal constitutional judicial system." *H.Rep. No. 91–887, reprinted in* [1970] *U.S.Code Cong. & Ad.News* pp. 3221, 3227. The district court for the Territory of Hawaii was given the same jurisdiction as district courts and circuit courts of the United States, as well as removal jurisdiction from the local courts already existing when the Islands came into the possession of the United States, by the terms of 48 U.S.C. §§ 641–45 (repealed 1948, 1959). The Territory of Alaska's district court had no need for diversity jurisdiction as it was the sole court in Alaska until statehood was achieved. As such, the district court entertained all actions in Alaska. 48 U.S.C. § 101 (amended 1958). Thus, Congress desired to accommodate each court system to the exigencies of the particular territory, and could well have decided that the Guam district court was not to be a diversity forum.

**10.** Although one case, *Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835 (9th Cir. 1973) stated that "jurisdiction was based on diversity and . . . § 1424(a)," at 836, the court could have established jurisdiction without diversity on the ground of section 1424(a) since the Guam legislature had not yet transferred local jurisdiction away from the district court. Thus the passing reference to the parties' jurisdictional allegation should not be considered controlling.

(1976), explained section 1424(a) as vesting "in the district court original jurisdiction of federal question cases and all local matters in Guam." 529 F.2d at 959. He further explained the judicial system that Congress expected to develop on Guam:

> Because of concern that there would not be sufficient federal question litigation to justify a separate district court in Guam, the court was given original jurisdiction in local matters. It was also envisioned that the district court would serve as an appellate body once local courts were established.

529 F.2d at 961.

I recognize that much judicial attention has been directed at interpreting the meaning of "arising under" and that various tests have been employed since the issue was first the subject of judicial controversy in 1824.[11] However, where no ingredient of the cause being asserted arises "under the Constitution, treaties, and laws of the United States," none of these tests supports treating it as so arising under federal law merely because the diversity statute is a federal law. It is telling that the majority cites several Supreme Court opinions for the principle that the "arising under" language has meant "different things in different contexts" but that none of the cited opinions suggest that diversity jurisdiction might flow from the use of such language.

*Supra* at 977. Indeed, no one has so suggested until the majority today.

Diversity jurisdiction cannot be smuggled into section 1424(a)'s "arising under" language by treating the diversity statute, 28 U.S.C. § 1332, as a law of the United States under which a cause of action may "arise." The diversity statute, of course, is a law of the United States. However, none of the causes sought to be asserted in these cases rests on law other than that of Guam. This is borne out by the fact that the majority cites no federal law in its opinion other than sections 1424(a) and 1421b(u). In truth, these causes arise under the laws of Guam.[12] That the jurisdiction of the District Court of Guam must be determined by reference to federal law in no way alters the source from which these causes arise.

Further support for concluding that section 1424(a) does not embrace diversity jurisdiction can be demonstrated by referring to the constitutional provisions from which the jurisdiction of the regular district courts flows.[13] Section 2 of Article III of the Constitution contains nine separately enumerated classes of cases jurisdiction over which Congress may extend to "inferior" federal courts. It must be presumed that every clause of the Constitution has force and effect; consequently, each of these nine distinct grants must be viewed as independent and mutually exclusive sources of jurisdiction. To assert that one

11. *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). Although many of the definitions have been discredited since their adoption, *see* Wright, *supra*, § 17, one of the most accepted is that set forth in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933):

> Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute. It may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive—not the source of the authority to establish it.

12. Neither is there validity to the argument that the ultimate source of rights here is federal because the territorial legislature acts pursuant

to a congressional grant of power. It has been established that the "legislative power to be exercised by the territorial legislature is the legislative power of the Territory, not that of the United States. . . . Its laws, unless set aside by congress or the courts, are the laws of the territory; they are not laws of the United States." *Adams Express Co. v. Denver & R. G. Ry. Co.*, 16 F. 712, 715 (C.C.Colo.1883); *Maxwell v. Federal Gold & Copper Co.*, 155 F. 110 (8th Cir. 1907); *Starklof v. United States*, 20 F.2d 32 (9th Cir. 1927); *United States v. Wright*, 15 F.R.D. 184 (D.Hawaii 1954).

13. Although the District Court of Guam is not an Article III court, as noted above, analogy to the provisions of Article III is useful in determining the congressional intent embodied in the grant of federal question jurisdiction in section 1424(a).

of these classes of judicial power—federal question—contains another class—diversity—would be to fly in the face of "the assumption that, in dealing with a subject as technical as the jurisdiction of the courts, the Framers, predominantly lawyers, used precise, differentiating and not redundant language." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 364, 79 S.Ct. 468, 476, 3 L.Ed.2d 368 (1959).[14] The "arising under" language of section 1424(a) is thus incapable of sustaining an infusion of diversity jurisdiction.

## III.

### *Section 1421b(u): Privileges and Immunities.*

As already noted, the majority attempts to support its improperly broad reading of section 1424(a) by engrafting access to federal courts on the basis of diversity onto the Privileges and Immunities clauses and finding those clauses extended to Guam pursuant to section 1421b(u). The flaw resides in the engrafting attempt. Access to federal courts based on diversity is not a privilege and immunity that Congress cannot deny to the citizens of the United States.

The contrary thought is an old one; but age has not lent it credence. Henry Friendly said of it in *The Historic Basis of Diversity Jurisdiction*, 41 Harv.L.Rev. 483, 492 n. 44 (1928):

One of the most specious arguments [in favor of diversity jurisdiction] was advanced by Hamilton in No. 80 of THE FEDERALIST. He thought that diversity jurisdiction was necessary for effective

enforcement of the privileges and immunities clause. But this forgets that if a state denies to a citizen of another state a privilege which it grants to one of its own, we have a ground of federal jurisdiction quite independent of the citizenship of the parties.

The purpose of the Privileges and Immunities clauses is to ensure that each citizen be accorded equal treatment in a state, regardless of his residency. As stated by the court in *Hague v. CIO*, 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939):

[I]t has come to be the settled view that Article IV, § 2, does not import that a citizen of one State carries with him into another fundamental privileges and immunities which come to him necessarily by the mere fact of his citizenship in the State first mentioned but, on the contrary, that in any State every citizen of any other State is to have the same privileges and immunities which the citizens of that State enjoy. The section, in effect, prevents a State from discriminating against citizens of other States in favor of its own.

The majority's use of the Privileges and Immunities clauses to justify extending diversity jurisdiction to Guam clashes with two other relevant lines of authority. First, Congress need not establish inferior courts and need not grant the full scope of jurisdiction which it is empowered to vest in them.[15] Holding that diversity jurisdiction is a privilege of citizenship places the Privileges and Immunities clauses at loggerheads with the power of Congress to withhold jurisdiction, including diversity juris-

---

**14.** Mr. Chief Justice Marshall, discussing the first three classes of judicial power in *American Ins. Co. v. Canter*, 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828), said at 514:

The Constitution certainly contemplates these as three distinct classes of cases; and if they are distinct, the grant of jurisdiction over one of them does not confer jurisdiction over either of the other two. The discrimination made between them, in the Constitution, is, we think, conclusive against their identity.

**15.** *See National Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 600, 607, 627, 655, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (it is inter-

esting to note that although the justices disagreed over the *extension* of jurisdiction there at issue, they all were agreed that Congress had the power to *limit* jurisdiction of the federal courts); *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943) (jurisdiction may be determined "in the exact degrees and character which to Congress may seem proper for the public good"); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850); *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 1 L.Ed. 718 (1799).

diction, from the federal courts as it sees fit. Second, Art. IV, § 2, cl. 1, has been held to be a restriction upon state power only, inapplicable to Congress in legislating for the Territories or the federal courts.[16] Thus, it appears unreasonable to infer an intention on the part of Congress to restrict its powers over both the federal courts and the Territories merely by making a territory responsive to the Privileges and Immunities clauses.[17] For these reasons, I believe the majority is wrong when it uses the Privileges and Immunities clauses to solve a non-existent "diversity riddle."

## IV.

### Conclusion.

I, therefore, conclude that the District Court of Guam does not have diversity or removal jurisdiction. This is said without any satisfaction because I believe that such jurisdiction should be given to it. My only satisfaction is that my dissent is some evidence that judges do not always decide cases the way they want to. As I see it, however, the task of vesting diversity jurisdiction in the District Court of Guam belongs to Congress. It is a task, moreover, to which Congress should turn because the

16. See Duehay v. Acacia Mut. Life Ins. Co., 70 App.D.C. 245, 105 F.2d 768, 775 (1939), overruled on other grounds in Sackett, Chapman, Brown & Cross v. Osgood, 80 U.S.App.D.C. 99, 149 F.2d 825 (1945) ("It is a limitation upon the powers of the states and in no way affects the powers of Congress over the territories and the District of Columbia."); Hawes v. Club Ecuestre El Comandante, 535 F.2d 140, 145 (1st Cir. 1976) ("Article IV, § 2 is a limitation on powers of states and in no way affects the powers of a federal district court.").

17. That the extension of the Privileges and Immunities clauses to Guam was meant to limit the power of the territorial legislature rather than affect the jurisdiction of the district court is also bolstered by the legislative history behind the extending provision, 48 U.S.C. § 1421b(u) (1970). The latter was part of the 1968 amendments to the Organic Act of Guam whose main purpose was to change the office of Governor from an appointive to an elective position. The elective Governor legislation for Guam was patterned after the 1947 elective Governor legislation for Puerto Rico, which included a provision for the Privileges and Immu-

District Court of Guam appears to be an anomaly as to diversity jurisdiction.[18] No other state or territory occupies a similar posture. Should Congress be diverted from its task by the holding in this case, I only hope that the majority's opinion be viewed as judicial legislation having no authority beyond the territorial limits of Guam.

I respectfully dissent.

nities clauses as a result of a rumor that the Puerto Rican legislature intended to tax the property of nonresidents at a higher rate than that of residents. The Privileges and Immunities clauses was thus extended to Puerto Rico to preclude this discriminatory possibility by the local legislature. See Letter from Ass't Solicitor of Office of Territories to Director of Office of Territories, reprinted in [1968] U.S. Code Cong. & Ad.News p. 3576.

18. The district courts of the fifty States and of Puerto Rico exercise diversity jurisdiction by virtue of 28 U.S.C. § 1332 (1970). The District Court of the Virgin Islands does not need diversity jurisdiction due to its grant of concurrent original jurisdiction over all but the most minor local causes. 48 U.S.C. §§ 1612 and 1613 (1970). Similarly, the District Court of the Canal Zone possesses extensive original jurisdiction over local causes and does not need diversity jurisdiction. 3 C.Z.Code § 141 (1962). The United States District Court for the District of Columbia exercises diversity jurisdiction pursuant to its description as a "United States district court" in 11 D.C.Code § 11–501 (1970).