475 So.2d 248 (1985)
Sandra W. CARLISLE, As Personal Representative of the Estate of William R. Carlisle, Deceased; Sandra W. Carlisle, Individually; Thomas D. Albright, Individually and As Husband of Linda K. Albright, Individually and As Wife of Thomas D. Albright, Her Husband, Appellants,
v.
ULYSSES LINE LTD., S.A.; and Paquet Cruises, Inc., a New York Corporation, Appellees.
No. 83-2618.
District Court of Appeal of Florida, Third District.
July 23, 1985.
Rehearing Denied October 2, 1985.
*249 Spence, Payne, Masington & Grossman, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Miami, for appellants.
Mitchell, Harris, Canning, Murray & Usich and C. Robert Murray, Miami, for appellees.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Plaintiffs appeal an order granting defendants' motion for summary judgment on two counts of a three-count complaint.[1]
Mr. and Mrs. Carlisle and Mr. and Mrs. Albright were passengers aboard the S.S. Dolphin on a four-day cruise to Freeport and Nassau. They were attracted to this particular cruise by promotional brochures advertising the beautiful beaches of Nassau. The ship left Miami on November 10, 1980, and stopped in Freeport without event. Upon arriving in Nassau, the two couples rented a jeep and headed for the beaches. Following the advice of the ship's activities director, they traveled a perimeter road around the island until they discovered an isolated access road which they took down to a secluded waterfront site known as "Yamacraw Beach." On their return back up the overgrown dirt road, they were ambushed by three masked gunmen who opened fire on them with shotguns. All four of them were wounded. Mr. Carlisle later died from a gunshot wound to the head. After the incident, the survivors learned from members of the ship's crew that other tourists and a member of the ship's crew had been victims of violent acts perpetrated in various places on the island. Bahamian police reported that the particular beach where plaintiffs were attacked was "very bad."
The survivors instituted this action against the defendants alleging (1) negligence, (2) breach of warranty, and (3) breach of contract. On defendants' motion, the trial court dismissed the breach of warranty count. The defendants then moved for summary judgment on the remaining two counts. The court entered final summary judgment for defendants on the grounds that (1) there was no negligence as a matter of law because at the time of the criminal attack, the plaintiffs were not under the defendants' control, and further the plaintiffs were injured outside the scope of any duty of care owed by the defendants, and (2) the negligence and breach of contract actions were barred by the exculpatory provisions in the contract of carriage.
First, the disclaimer of liability contained in the contract of carriage, by its very terms, does not purport to relieve the defendants of liability for their own negligence, but only for the negligent acts of others. In fact, any attempt by the defendants to exculpate themselves from liability for injuries arising from their own negligence or that of their employees would be unlawful. 46 U.S.C. § 183c (1958); see Moore v. American Scantic Line, Inc., 121 F.2d 767 (2d Cir.1941). The cases relied upon by the trial court are clearly distinguishable. Cf. Chervy v. Peninsular and Oriental Steam Navigation Co., 243 F. Supp. 654 (S.D.Cal. 1964) (persons injured were not passengers but "guests"; statutory provision held inapplicable), aff'd, 364 F.2d 908 (9th Cir.1966), cert. denied, 385 U.S. 1007, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); Lohman v. Royal Viking Lines, Inc., 1981 A.M.C. 1104 (D.Col. 1980) (suit based upon alleged negligence of others, not of the defendants). The principle applies equally to the breach of contract count, since negligence by a common carrier constitutes a breach of the contract of carriage. See Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. 1972); Butts *250 v. County of Dade, 178 So.2d 592 (Fla. 3d DCA 1965).
Second, the trial court granted summary judgment on the negligence count on a finding that the plaintiffs, at the time of injury, were outside the scope of any duty of care owed by defendants. Since the negligence cause of action is founded on a maritime tort, we are bound to apply controlling federal maritime law. See Kermarec v. Campagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). It is true that the cases cited by the trial court, and those additional cases cited by appellees, hold that the duty of a common carrier extends to the point of debarkation and embarkation. See, e.g., Metzger v. Italian Line, 1976 A.M.C. 453 (S.D.N.Y.), aff'd, 535 F.2d 1242 (2d Cir.1975); Lawlor v. Incres Nassau Steamship Line, Inc., 161 F. Supp. 764 (D.Mass. 1958); The Valencia, 110 F. 221 (D.Wash. 1901), aff'd sub nom. Pacific Steam Whaling Co. v. Grismore, 117 F. 68 (9th Cir.1902). The cases do not, however, purport to define the limits of the duty.
In fact, the Lawlor decision actually supports the proposition that a common carrier has a duty of care past the point of debarkation and embarkation. There, a passenger was injured on shore while boarding a tender which was to take him back to the vessel from a dock. In holding that the ship had a duty to transport its passengers safely to shore by tender where the vessel anchored in the harbor, the court stated:
[U]nder ordinary circumstances ... an attempt on the part of the carrier to contract out of this sphere of duty and to limit himself to protecting the passenger only while he is on the vessel is repugnant to the essence of the voyage.
Lawlor, 161 F. Supp. at 767. The court specifically declined to answer the hypothetical question whether the carrier has a duty of care past the shoreline, for example, while the passenger is in a night club. Id. at 768.
Similarly, the Metzger decision cited by the trial court does not foreclose a finding of duty here. The Metzgers were passengers on a cruiseship which put into Montego Bay, Jamaica. The Metzgers went ashore and, rather than participating in a supervised shore excursion, made their own arrangements to take a taxi to Ocho Rios. En route, the taxi in which they were riding was involved in an accident. The Metzgers brought a negligence action against the cruise line, alleging, as here, a failure to warn of known dangers ashore. The court held simply that:
[O]n the established facts the defendant is not liable for injuries sustained by a passenger on shore by reason of a negligent independent contractor with whom the defendant has no relationship, and as to whom defendant had no awareness of a risk and consequently no duty to warn. [e.s.].
1976 A.M.C. at 454. We agree with the plaintiffs that Metzger thus turns on the question of foreseeability, rather than on the scope of duty owed by a common carrier to its passenger.
In absence of constraining maritime law, we are free to embrace the reasoning of the ninth circuit in Tradewind Transportation Co. v. Taylor, 267 F.2d 185 (9th Cir.), cert. denied, 361 U.S. 829, 80 S.Ct. 79, 4 L.Ed.2d 72 (1959). In that case, the plaintiff purchased a ticket which entitled her to transportation with others in an automobile. The auto was to circle the island of Oahu in Hawaii, and to stop at various points of interest along the way. The tour was not a guided tour, however, in that the driver was simply to stop at the selected sites and allow the passengers to alight and examine the places. The auto eventually stopped at a temple and the passengers alighted to examine its interior. The steps and walks of the building were wet with rain. The driver, who did not enter the temple, knew that the steps were wet but did not warn his passengers of that fact. Plaintiff slipped on the steps and sued the tour company. The court held that the tour company owed its passengers the duty of ordinary care: to warn them of any unreasonable risk of harm known to it and unknown to plaintiff. The plaintiff, *251 however, failed to prove a breach of this duty by a preponderance of the evidence.
The Tradewind case stands for the reasonable proposition that where a common carrier has a continuing obligation for the care of its passengers, its duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit. See also Rookard v. Mexicoach, 680 F.2d 1257 (9th Cir.1959) (carrier acting as travel agent for passengers' continuing travel on another carrier has duty to warn of known risks associated with travel on other carrier's line). This duty extends throughout the length of the voyage, and does not cease at each port of call, only to resume when the passenger re-embarks. See generally Isham v. Pacific Far East Line, Inc., 476 F.2d 835, 837 (9th Cir.1973) ("Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the sine qua non of the cruise"); Lawlor, 161 F. Supp. at 767 ("One of the principal purposes of the trip is for the passenger to go ashore at Caribbean ports.")
In extending a cruise ship's duty to its passengers beyond the port, we also circumscribe the duty. Our holding applies only to carriers that have a continuing obligation of care for their passengers, and does not extend to a carrier engaged simply for point-to-point transportation. That duty, which is to warn, encompasses only dangers of which the carrier knows, or reasonably should have known. Cf. McCormick Shipping Corp. v. Stratt, 322 F.2d 648 (5th Cir.1963) (shipowner bound not only by what it actually knows, but also what it should have known, as to defects existing on the ship). Additionally, the duty to warn is limited to dangers known to exist in the particular place where the passenger is invited to, or reasonably may be expected to visit.
The defendants urge us to apply the doctrine of proximate cause and hold that they are not liable as a matter of law where the criminal acts of a third party constitute an intervening or superceding cause of injury. The short answer to this contention is that a party may be liable in negligence for intervening criminal acts if the acts are foreseeable. See Bullock v. Tamiami Trial Tours, Inc., 266 F.2d 326 (5th Cir.1959) (where injury to passenger by third party could have been "reasonably anticipated" or "naturally expected to occur" or "reasonably foreseen," the carrier must protect its passenger from, or warn him of, the danger); Restatement (Second) of Torts § 448 (1965). Furthermore, the issue of foreseeability is ordinarily a jury question where there is sufficient evidence of foreseeability to preclude a determination of the issue as a matter of law. See Bullock; Werndli v. Greyhound Lines, Inc., 412 So.2d 384 (Fla. 2d DCA 1982) (in action by bus passenger against carrier and bus terminal sublessee for injuries sustained in attack by third party near darkened, closed, and locked terminal, evidence was sufficient to create jury question as to whether criminal attack on passenger was reasonably foreseeable).
We dispose of the summary judgment issue on narrow points of law, holding (1) the contract in question does not, indeed could not, relieve the defendants from liability for their own negligence, and (2) a duty of a cruise ship line to its passengers is not limited to the point of debarkation and embarkation. The trial court did not consider the facts as they relate to a breach of the now-recognized duty to warn, for which purpose the case must be remanded.
Reversed and remanded for further consistent proceedings.
NOTES
[1] No appeal was taken from the order dismissing count II based on a breach of warranty.